MILWAUKEE STREET RAILWAY COMPANY, Appellant, vs. ADLAM and others, Respondents.

*April 14 — May 2, 1893.*

*Municipal corporations: Street improvements: Interference by contractors with street railway: Injunction.*

Contractors to repave a street will be enjoined from interfering with the operation of a street railway thereon, where the work can be done without such interference, though at a slight increase of expense, and where the city has not attempted to exercise or to delegate to the contractors the power to stop the running of cars while the work is being done. [Whether a city has or can delegate such a power, not determined.]

Milwaukee Street R. Co. vs. Adlam and others.

APPEAL from the Superior Court of *Milwaukee* County.

Prior to 1892 Third street between Harmon and Walnut streets in Milwaukee had been macadamized. In May, June, and the fore part of July, 1892, the requisite steps had been taken to authorize the removal of from nine to eleven inches of said macadam, and to repave the same with cedar blocks. On July 15, 1892, the defendants *Adlam & Mosher*, as parties of the first part, and Crilley & O'Donnell, as parties of the second part, and the city of Milwaukee, as party of the third part, entered into a written contract wherein and whereby the said *Adlam & Mosher* agreed in effect, to and with the city, to furnish all material and do all work necessary and required to grade and pave the roadway and gutters with cedar blocks on Third street from Walnut to Harmon streets, under the superintendence of the board of public works of the city, for the sum of $1.19½ per square yard for the paving, which should include all necessary grading, and that they would complete said work according to specifications. It was therein further agreed that the said board of public works should have the right and power, which was thereby reserved to them, to adjust and determine finally all questions, and that such adjustment and determination should be final and conclusive between the parties to said contract; that the said *Adlam & Mosher* would during the night time put up and maintain such barriers and lights as would effectually prevent the happening of any accident in consequence of the digging up, use, or occupancy of said street, and that the parties of the first part and second part thereby assumed the liability for, and would pay on demand, any and all damages occasioned by the digging up, use, or occupancy of said street in doing said work. Thereupon *Adlam & Mosher* sublet a portion of said job to the defendant *Roehring*, and the said defendants entered upon the performance of said contract.

On September 23, 1892, tne plaintiff commenced this action to restrain the defendants from obstructing in any manner the running of its cars over said street, or to do grading and paving thereon in such a way and in such a manner as to prevent the plaintiff from running its cars along the same, or to interfere with the running thereof, directly or indirectly, or the operation of its railroad. The complaint alleged, among other things, the incorporation of the plaintiff; that it had eighty miles of track in said city, and was engaged in carrying passengers in said city over the same; that its cars were passing each day over the street in question for more than fourteen hours, carrying many thousand passengers, and that such transportation of passengers over said track and other tracks in the city was of great convenience and benefit to the public; that the said *Adlam & Mosher* had the contract mentioned, and had sublet a portion thereof to the said *Roehring;* that in the execution of said contract the defendants threatened to obstruct and prevent the running of said cars on said street, and gave out that they would stop the same by the erection of barriers; that for many years previously many of the streets in said city, over which said street cars were run, had been repaired and repaved, and the grading done necessary for such repairs and repaving, without interfering with the running of such cars, and that the grading and paving in question could reasonably and properly be done without such interference; and that it was the duty of the defendants to so grade and repave said streets as to allow said cars to continue to run thereon. Thereupon a preliminary injunction was granted, restraining the defendants from interfering with the running of said cars, by a court commissioner.

The defendants answered said complaint and alleged, in effect, that the grading and paving of said street was a great public improvement; that the street was much trav-

eled, and was a public thoroughfare, and it was necessary
to public travel that it should be completed as soon as
practicable; that it was impracticable and impossible for
the defendants to do the work required by the terms of said
contract unless they had possession of said street, or at least
one half thereof, upon which to do said work; that it had
always been customary in the city, whenever any street
was graded and paved upon which said railway was located,
either for the railway company to grade the portion of the
street occupied by its tracks, and pave the same, or to put
in temporary switches at a distance of from one to two
blocks apart, so that the cars of said company might be
switched in onto a single track for such distance, and thus
enable the contractor to occupy one half the street in grad-
ing or paving the same. Said answer was verified, and
thereupon, and upon the record, said answer, and the affi-
davits of *John Roehring* and Fred Gottschalk, the defend-
ants obtained an order to show cause, September 30, 1892,
why said temporary injunction should not be modified, va-
cated, and dissolved. The answer was supported and cor-
roborated, in part, by the affidavits of said *Roehring* and
Gottschalk, and stated, among other things, that the por-
tion of Third street in question was fifty feet in width from
curb to curb, and that the plaintiff's tracks occupied about
sixteen feet in the middle of said street, and that the cars
extended beyond the track about eighteen inches in ad-
dition.

Upon the hearing of said application the plaintiff read in
evidence, in support of its complaint, seven affidavits, one
of which was made by the chief engineer of the plaintiff,
of many years' experience and of much experience in the
city, who gave in detail the method of the doing of such
work, and its necessities, and among other things stated, in
effect, that the work could be done without hardship and
without delay without interfering with the running of the

plaintiff's cars, and that to accomplish that end it was not necessary that the contractors should have the use of the entire street or of one half thereof; that there remained of said street, outside of both tracks, more than sufficient ground so that they could, with ease and comfort, do the work under said contract without interfering with the running of the plaintiff's cars; that other streets, under similar circumstances, had been so regraded by the defendants and other contractors without interfering with such cars,— and giving the contracts made with two such other contractors, and one with the defendants *Adlam & Mosher*, in relation to which he stated that the said *Adlam & Mosher* did the work on Walnut street between Thirtieth and Twenty-Fourth streets, which consisted in grading and paving Walnut street between said streets, and that said work was done by them after July 21, 1892, and had been completed, and that they represented to the plaintiff that it would cost them, in addition, if the plaintiff's cars were allowed to run while they were doing said work, five cents per square yard, measured in the track and on the side next to curbing, and they agreed to perform said work without interfering with the running of said cars while doing the same, and allow the cars to run across the same while the men were engaged in such work, at a reasonable speed, by the plaintiff paying them said five cents per square yard, and produced the written contract between the plaintiff and the said *Adlam & Mosher*, and also six other affidavits to some extent corroborating the same. Upon the hearing of said application it was ordered by the trial court that the said preliminary injunction theretofore granted be dissolved. From that order the plaintiff appeals.

For the appellant there was a brief by *Miller, Noyes & Miller*, and oral argument by *Geo. P. Miller*. They argued, among other things, that a municipal corporation, for the purpose of repaving a street, cannot stop the running of

electric cars unless it be necessary. The municipality must use the streets in such manner as not unnecessarily to interfere with public travel. 2 Dillon, Mun. Corp. sec. 730; *Little v. Madison*, 42 Wis. 643; *Schultz v. Milwaukee*, 49 id. 259, 260; *Cairncross v. Pewaukee*, 78 id. 66; *Hughes v. Fond du Lac*, 73 id. 380. Every public improvement which unnecessarily prevents the public from using a highway is a nuisance. *Barnes v. Racine*, 4 Wis. 454; *Walker v. Shepardson*, 2 id. 384; *Williams v. Smith*, 22 id. 594; *Enos v. Hamilton*, 27 id. 256; *Wis. R. Imp. Co. v. Lyons*, 30 id. 61. The city cannot delegate the right to close streets to public contractors. *St. Peter v. Denison*, 58 N. Y. 416.

For the respondents the cause was submitted on the brief of *Austin & Hamilton*. They contended, *inter alia*, that a street railway company takes its right to maintain tracks in a public street subject to the police power of the municipality; and upon this principle it has been held that the tracks may be displaced and the operation of the railway prevented for a reasonable time, when it becomes necessary in order to enable the municipality to construct a sewer. *Kirby v. Citizens' R. Co.* 48 Md. 168.

CASSODAY, J. This action is not against the city, but is only against its contractors engaged in the work of repaving the street, as mentioned in the 'foregoing statement. The contract of the defendants with the city is silent as to whether the defendants, in doing the work, were authorized to obstruct or interfere with the running of cars by the plaintiff on the street in question. Of course it implies such occupancy of the street during the time as might be reasonably necessary to perform the work according to their contract. There is no claim or pretense that the plaintiff's tracks were not lawfully and rightfully in the street in question at the time of making such contract, nor that the plaintiff was not then lawfully and rightfully run-

ning its cars thereon. The permission to the railway company to use the street for the purposes indicated does not imply that the municipality thereby surrendered its right to make needful police regulations respecting the same, nor that the company was thereby authorized to unnecessarily obstruct the street or interfere with travel thereon, or to negligently operate its cars. Elliott, Roads & S. 334. It may be fairly inferred that the defendants entered into the contract, and agreed to perform the work at the price therein named, with reference to the condition of the street and the railway tracks and the running of cars thereon at the time it was made. The primary object of a public street in a city is for public travel. *Jochem v. Robinson,* 66 Wis. 641; *Hay v. Weber,* 79 Wis. 590. As appears from the foregoing statement, the plaintiff is extensively engaged in the carriage of passengers upon the street in question and other streets in the city. Assuming that, under its police power, the city had authority to arbitrarily stop the running of such cars during the time of such repaving, and that it might have delegated such power to these contractors (questions not here decided), yet it does not appear that the city has delegated any such power to the defendants, nor that it has attempted to exercise any such power. On the contrary, as will appear from the foregoing statement, the contract seems to contemplate the continuance of travel of some kind upon the street pending the performance of the work — hence the provisions for putting up and maintaining barriers and lights at night to prevent accidents. Certainly, for much of the time, such cars would not be as likely to interfere with such repaving as other vehicles, since the cars would at all times move upon fixed lines. The public had as much right to travel by such cars as they had by other vehicles. To allow the contractors to arbitrarily stop the cars, and permit other vehicles to continue running on that street, pending

the work, would be to authorize an unwarrantable discrimination against not only the plaintiff but also against persons desiring to travel upon that street in the cars. It is fairly demonstrated by the affidavits in the record that there was no necessity for stopping the running of the cars over the street in question during such repaving. In fact it appears that other contractors — and in one instance these defendants — had repaved streets on which the plaintiff's tracks were located under agreements that they would not interfere with the running of cars thereon at a reasonable speed while doing the work. True, in such other cases the contractors respectively exacted of the company, and the company paid, five cents per square yard, measured in the tracks and on the side next to curbings, as a condition of their not interfering with the running of cars thereon at a reasonable speed while doing the work; but that fact does not support the contention that such stoppage was an absolute or even a reasonable necessity. On the contrary, it fairly demonstrates that while such continuous running slightly interfered with the performance of the work, yet there was no reasonable necessity for absolutely suspending the running of cars. Such slight interference naturally suggests a slight increase in the cost of the work; but the price for doing the work is purely a matter of contract, and, as indicated, it may be fairly assumed that it was taken into account in making the contract in question. However that may be, the defendants have no contract relations with the plaintiff, and cannot enforce the making of such contract or the payment of money on the theory that there is a necessity that the running of the cars should be absolutely suspended, when it is thus demonstrated that no such necessity exists. While the defendants had the right to interfere with the running of such cars so far as it became reasonably necessary in the

performance of the work, yet such right to so hinder or obstruct was by no means absolute or continuous, but at most temporary, depending upon such necessity; and such necessity must have depended upon the width of the street, the nature of the work, the conditions of the weather, the duration of the obstruction, and perhaps other circumstances.

The question is somewhat similar to the interference with travel upon streets and sidewalks by abutting owners, which has received some consideration from this court. *Jochem v. Robinson*, 66 Wis. 642; *Raymond v. Keseberg*, 84 Wis. 302. In *Gas Light & Coke Co. v. Vestry of St. Mary Abbott's*, 15 Q. B. Div. 5, the municipality was restrained from using steam rollers in repairing the street in a way to injure the plaintiff's gas pipes in the earth beneath. LIND-LEY, L. J., speaking for the court, said: "The authorities, and particularly *Metropolitan Asylum Dist. v. Hill*, 6 App. Cas. 193, show that an action lies for an injury to property, unless such injury is expressly authorized by statute, *or is, physically speaking, the necessary consequence of what is so authorized.*" In *Hamilton v. V., S. & P. Railroad*, 119 U. S. 280, the right of the railroad company to construct a bridge over a navigable stream in a way to interfere with the navigation thereon was involved; and Mr. Justice FIELD, giving the opinion of the court, said: "Two conditions, however, must be deemed to be embraced within this implied power,— one, that the bridges should be so constructed as to insure safety to the crossing of the trains, and be so kept at all times; *and the other, that they should not interfere unnecessarily with the navigation of the streams.*" That language has been quoted approvingly by this court. *J. S. Keator Lumber Co. v. St. Croix Boom Corp.* 72 Wis. 86.

It follows from what has been said that the rights of neither of the parties to this action were absolute, as against the other, in respect to the street in question, but the rights

of each were relative with respect to the duties and obligations of the other and the traveling public generally.

*By the Court.*— The order of the superior court of Milwaukee county is reversed, and the cause is remanded for further proceedings according to law.