WISCONSIN POWER & LIGHT COMPANY, Respondent, v. GERKE, d/b/a GERKE CONSTRUCTION COMPANY, Appellant.

*April 29—June 4, 1963.*

184

For the appellant there were briefs by *Jasper, Winner, Perina & Rouse* of Madison, and oral argument by *Robert I. Perina.*

For the respondent there was a brief by *Petersen, Sutherland, Axley & Brynelson,* and oral argument by *James C. Herrick,* all of Madison.

FAIRCHILD, J.   Sec. 66.047, Stats. 1959, provides:

"No contractor having a contract for any work upon, over, along or under any public street or highway shall interfere with, destroy or disturb the structures of any public service corporation encountered in the performance of such work so as to interrupt, impair or affect the public service for which such structures may be used, without first procuring written authority from the commissioner of public works, or other properly constituted authority.  It shall, however, be the duty of every public service corporation, whenever a temporary protection of, or temporary change in, its structures, located upon, over, along or under the surface of any public street or highway is deemed by the commissioner of public works, or other such duly constituted authority, to be reasonably necessary to enable the accomplishment of such work, to so temporarily protect or change its said structures; provided, that such contractor shall give at least 2 days' notice of such required temporary protection or temporary change to such corporation, and shall pay or assure to such corporation the reasonable cost thereof, except when such corporation is properly liable therefor under the law, but in all cases where such work is done by or for the state or by or for any county, city, village, or town, the cost of such temporary protection or temporary change shall be borne by such public service corporation."

1. *Contractor's liability for damage to transmission line.* Gerke contends that the Power Company was obliged to

remove the line; that the line was therefore a nuisance which he could summarily abate. It seems to us, however, that the first sentence of sec. 66.047, Stats. 1959, just quoted, furnishes a clear answer.

The term "commissioner of public works, or other properly constituted authority," as used in the statute, requires interpretation. From the history and context of the section, the "commissioner of public works" must mean the board of public works (consisting of commissioners) in cities where they exist and have supervision over construction and maintenance of streets.[1] "Other properly constituted authority" is construed to mean the public body having supervision over construction and maintenance of the highway in question similar to the supervision vested in the board of public works in cities where such boards exist. In the case before us the properly constituted authority was the state highway commission.

Mr. Gerke had had no written authority from the highway commission (or any other body) to interfere with the Power Company's line. Whatever duty the Power Company had to remove it, the clear terms of sec. 66.047, Stats. 1959, prohibited his knocking it down. Recovery by the Power Company of its damage was properly allowed.

2. *Contractor's cause of action for interference with the conduct of his business.* Mr. Gerke contends that the Power Company wrongfully interfered with the conduct of his business by leaving the line in place. At the trial he proved that he was hampered in the use of some of his machinery by the presence of the line. It was not only a physical barrier, but a source of great hazard if parts of his machine came close enough to the line for the electricity to arc from the line to the machine.

". . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . per-

---

[1] See sec. 62.14, Stats., and sec. 925–78, Stats. 1915.

form a contract with another, . . . is liable to the other for the harm caused thereby." [2]

Here it is the one whose acts are interfered with who seeks redress because the performance of his contract was made less profitable. It has been recognized that,

". . . the value of a bargain may be impaired although there is no failure of performance. In such a case, it may be the promisor rather than the promisee who sustains the loss. Thus, any conduct which is intended to and which, in fact, makes performance more onerous is, unless privileged, a tort against the promisor." [3]

We have no difficulty with the concept of the cause of action Mr. Gerke asserts he has, but we do have difficulty with its application to the circumstances now under consideration.

The Power Company served about 50 customers west of I-90 by means of the transmission line involved here. It had a permit from the town board of the town of Burke.[4] Before the laying out of I-90, the line apparently complied with all requirements. The construction of I-90 brought about two new duties: (1) The Power Company must change its lines on a permanent basis so that it would provide at least 22 feet of clearance above the surface of I-90 when finished,[5] either by raising the line in approximately

---

[2] Restatement, 4 Torts, p. 49, sec. 766. See *Northern Wisconsin Co-operative Tobacco Pool v. Bekkedal* (1924), 182 Wis. 571, 581, 197 N. W. 936, *E. L. Husting Co. v. Coca Cola Co.* (1931), 205 Wis. 356, 365, 237 N. W. 85, and 30 Am. Jur., Interference, p. 84, sec. 42.

[3] 1 Harper and James, Law of Torts, p. 499, sec. 6.9.

[4] See secs. 84.08, 86.16, 182.017, 196.58 (1), and 196.74, Stats., for the authority of an electric public utility to use the public highways and the requirement of permit from the town board and approval by the state highway commission where the highway is within a town.

[5] 4 Wis. Adm. Code, sec. E 2.01, State Electrical Code, pursuant to sec. 196.74, Stats.

the same location, along State Trunk Highway 19, or by relocating the line elsewhere so as to cross with proper clearance;[6] (2) if the performance of the work of construction at any time made some additional temporary change reasonably necessary to enable the accomplishment of such work, the Power Company must make such temporary change.[6a]

As applied to the circumstances of this case, the two duties are somewhat interwoven. The least drastic and least expensive method of fulfilling the first duty would be to raise the wires along approximately the same route by the use of taller poles. Gerke claimed, however, that neither a 42-foot nor even a 60-foot clearance over ground level would fulfil the second duty. A complete rerouting of the line so that the crossing would occur at a point where ground conditions were different and would not require the same type of operations as Gerke was performing, would be more expensive, and would apparently fulfil both duties. Presumably the representatives of the Power Company thought that such rerouting would involve a greater change than reasonably necessary for Gerke to perform his work.

If Mr. Gerke's only complaint was that the Power Company should have raised its line to a 42-foot clearance above ground level, and if he claimed that he could have carried on his work with the line at that height, and if he had given

---

[6] "The fact that poles in a street or highway were located in a certain place by an electric company pursuant to permission of the authorities creates no absolute, indefeasible right or irrevocable license to have such poles remain at the particular spot for all time." 18 Am. Jur., Electricity, p. 421, sec. 18. See *Milwaukee E. R. & L. Co. v. Milwaukee* (1932), 209 Wis. 656, 667, 245 N. W. 856, 20 Op. Atty. Gen. (1931), 429, and Anno. 75 A. L. R. (2d) 419.

[6a] The utility's duties with respect to temporary changes are governed by the latter portion of sec. 66.047, Stats. 1959, above quoted.

proper notice [7] we would have no difficulty in concluding that the Power Company's deliberate delay in raising its line would entitle Gerke to damages for intentional, unprivileged interference with his performance of his contract. This, however, is not the situation, as it is Gerke's position that he could not operate his machine with a clearance of 42 or even 60 feet, as offered August 13th.

His claim is that the use of the machinery he chose to use was reasonably necessary, that the 90-foot boom must be used at an angle which would be unsafe if the wires were 60 feet from the ground, and that it was reasonably necessary that the line be removed, at least temporarily. The Power Company having refused to recognize his claim, and loss having resulted, he considers that the circuit court should determine the issue of what was reasonably necessary.

We think this position is contrary to the policy expressed in sec. 66.047, Stats. 1959. This section was created as sec. 959–30, Stats., by ch. 439, Laws of 1915. A note in the relevant file in the office of the secretary of state says: "This bill is legislative recognition of the doctrine of law laid down in the *Adlam case,* 85 Wis. 142."

In the *Adlam Case* [8] a contractor was repaving a street for the city. He attempted to halt the operation of street-railroad cars while the repaving was being done. The street-railroad company brought action to enjoin the contractor from disrupting service. This court decided that as a matter of fact there was no necessity for stopping the operation of the street railway during the repaving. It said

---

[7] Although the state highway commission had given the Power Company many months' notice of the proposed construction, the specifications incorporated in the contract required the contractor to give notice *in writing* to those in charge of electric conduits which might be affected "at least 48 hours before breaking ground." Gerke gave no written notice.

[8] *Milwaukee Street R. Co. v. Adlam* (1893), 85 Wis. 142, 149, 150, 55 N. W. 181.

that the contractor "had the right to interfere with the running of such cars so far as it became reasonably necessary in the performance of the work, . . ." The court also said:

"It follows from what has been said that the rights of neither of the parties to this action were absolute, as against the other, in respect to the street in question, but the rights of each were relative with respect to the duties and obligations of the other and the traveling public generally."

We conclude that in enacting sec. 66.047, Stats. 1959, the legislature not only adopted the standard of reasonable necessity for determining the extent to which a contractor could demand temporary changes in utility structures in order to facilitate his work, but also provided that where the parties do not agree the determination must be made by the public body having supervision over construction and maintenance of the particular highway.

When Mr. Gerke and the Power Company could not agree, it was up to the state highway commission to determine the changes which were reasonably necessary. Once it had so determined, the statute makes it clear that since the work was being done for the state, the cost would have to be borne by the Power Company. In view, however, of the purpose of the statute to provide for administrative determination of the changes which were reasonably necessary, it would be bad policy for the courts to make such determination where the parties bypassed the administrative determination.

It is most unfortunate that the course which was followed resulted in wasted effort and expense. The record suggests that the greater fault may be charged to the Power Company. If the company took the position that Gerke must pay for temporary changes that were reasonably necessary, it was certainly wrong. But we conclude as a matter of policy that any losses which resulted from failure

to observe sec. 66.047, Stats. 1959, should remain where they happened to fall.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.