**CHRYSLER CORPORATION, a Delaware Corporation, Plaintiff,**

v.

**LAKESHORE COMMERCIAL FINANCE CORPORATION, a Wisconsin Corporation, Defendant.**

**No. 73–C–488.**

United States District Court,
E. D. Wisconsin,
Milwaukee Division.

March 6, 1975.

**1218**

Victor M. Harding, Whyte, Hirschboeck, Minahan, Harding & Harland, S. C., Milwaukee, Wis., for plaintiff.

Robert K. Steuer, Lorinczi & Weiss, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

On September 7, 1973, plaintiff Chrysler Corporation filed a complaint against defendant Lakeshore Commercial Finance Corporation in federal court charging that defendant had wrongfully induced a third corporation, Adamatic, Inc., not a party to the instant action, to breach its contract with plaintiff. Defendant responded to the complaint on September 13, 1973, by filing a motion to dismiss for failure to state a claim upon which relief could be granted pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, premised upon the doctrine of collateral estoppel. That motion, which has been fully briefed and argued by the parties, is the subject of disposition herein. With respect to plaintiff's cause of action for wrongful inducement of a breach of contract, jurisdiction resides in this Court by virtue of the provisions of 28 U.S.C. § 1332(a)(1).[1]

This case represents another phase of a continuing dispute between Chrysler Corporation and Lakeshore Commercial Finance Corporation which culminated in a replevin action commenced by Chrysler Corporation against Adamatic, Inc. in the Circuit Court of Milwaukee County. Essentially, it is the defendant's position that the doctrine of collateral estoppel effectively precludes litigation herein of plaintiff's cause of action for wrongful inducement of a breach of contract by defendant in view of the fact that the Wisconsin Supreme Court has conclusively decided that defendant was privileged to interfere in such contract. In support of its position, defendant relies on the decision of the Wisconsin Supreme Court in Chrysler Corp. v. Adamatic, Inc., 59 Wis.2d 219,

---

1. "§ 1332. Diversity of citizenship; amount in controversy; costs

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and is between—

(1) citizens of different states;"

208 N.W.2d 97 (1973), a copy of which has been annexed to defendant's motion, as well as several affidavits to which copies of the circuit court pleadings and judgment have been annexed. In addition, the Court has requested submission of the briefs argued by both parties on appeal to the Wisconsin Supreme Court.

Although it is proper to raise the defenses of judicial finality either by motion to dismiss or by motion for summary judgment,[2] rule 12(b) of the Federal Rules of Civil Procedure provides in part as follows:

> "(b) How Presented. . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . ."

Moreover, the decision of the Seventh Circuit Court of Appeals in Grand Opera Co. v. Twentieth Century-Fox Film Corp., 235 F.2d 303 (7th Cir., 1956) implicitly mandates that if this Court examines the affidavits and exhibits submitted by defendant in support of its motion to dismiss, it must treat such motion as one for summary judgment:

> "It is elementary that the district judge, in considering the motions to dismiss the amended complaint, had no right to consider any facts except those well-pleaded in the amended complaint. He had no right to hear evidence. He had no right to take judicial notice of anything, with the possible exception of facts of common knowledge which controvert averments set up in the amended complaint. . . ." Id. at 307.

In view of the fact that resolution of the collateral estoppel issue is necessarily dependent upon this Court's ability to examine the decision of the Wisconsin Supreme Court, heretofore mentioned, as well as the affidavits of defendant's counsel and the exhibits attached thereto, this Court will treat defendant's motion as one for summary judgment in accord with rule 56 of the Federal Rules of Civil Procedure. Having so decided, it is incumbent upon the Court to examine the undisputed facts surrounding this controversy.

Since July, 1967, defendant Lakeshore Commercial Finance Corporation (hereinafter "Lakeshore") had financed the operations of Adamatic, Inc. (hereinafter "Adamatic"), in return for which it obtained a security interest in Adamatic's inventory and receivables by means of various perfected security agreements. Plaintiff Chrysler Corporation (hereinafter "Chrysler") during that time conducted two transactions with Adamatic, only the second of which is relevant to this lawsuit and will be recounted herein. In April, 1970, Chrysler contracted with Adamatic for the production of three twelve-coil stator winders at a purchase price of $83,646.43 per machine. Adamatic, as seller, agreed to deliver the first such machine by September 7, 1970, the second by October 7, 1970, and the third by November 6, 1970. Furthermore, the parties had agreed that Chrysler, as buyer, would make advance payments on the purchase price to Adamatic after the work on the machines was 25 percent complete. The advance payments were not to exceed 80 percent of the value of the labor and materials which, to that point, had been used in the construction of the machines, and in September, 1970,

---

2. See, generally, Butterman v. Walston & Co. (E.D.Wis., 1970), 50 F.R.D. 189, 191: "When the identity of controlling facts in two cases is apparent on the face of the complaint, the defense of res judicata can be raised by a motion to dismiss. Florasynth Laboratories v. Goldberg, 191 F.2d 877, 880 (7th Cir. 1951). Accord, Williams v. Murdoch, 330 F.2d 745, 749 (3rd Cir. 1964). Likewise, res judicata may properly be raised on a motion for summary judgment. Hardy v. Bankers Life & Casualty Co., 232 F.2d 205, 210–211 (7th Cir. 1956). Accord, Smith v. United States, 369 F.2d 49, 53 (8th Cir. 1966)."

Chrysler made such payment in the amount of $105,761.55.

On September 15, 1970, Lakeshore and Adamatic personnel met to discuss Adamatic's progress on the Chrysler contract as well as Adamatic's general financing prospects. At that time, Lakeshore advised Adamatic that it was in default and that unless it found some alternative source of financing, Lakeshore would be forced to liquidate its loan. Nevertheless, Lakeshore advanced an additional $30,000 to $50,000 to Adamatic, and by October 15, 1970, Adamatic's debt to Lakeshore was approximately $340,000.

Meanwhile, Adamatic had fallen behind in its delivery schedule with respect to the three twelve-coil stator winders, and on October 12, 1970, Chrysler sent one of its representatives to the Adamatic plant in Milwaukee to expedite delivery. After additional work was performed on the machine, the Chrysler representative advised that the first of the three twelve-coil stator winders was in an acceptable condition and arranged to have the machine prepared for shipment. Pursuant to Chrysler's directive, the machine was skidded to the Adamatic loading dock on Monday, October 19, 1970, preparatory to being loaded on a common carrier truck supplied by Chrysler for shipment of the machine to the Chrysler plant in Indianapolis.

At this point, Lakeshore became cognizant of Chrysler's attempt to take delivery of the first twelve-coil stator winder and, by telephone, directed Adamatic not to ship the machine. Accordingly, Adamatic personnel removed the machine from the truck and returned it to the plant. The following day, attorneys and representatives of Chrysler met with the attorneys and representatives of Lakeshore. Chrysler claims that at such meeting Lakeshore demanded that Chrysler renegotiate the purchase price of the three twelve-coil stator winders in excess of the contract price if it wanted delivery of the machines. Chrysler would not agree and instead commenced a replevin action against Adamatic in the Milwaukee County Circuit Court on October 21, 1970. That same day the sheriff of Milwaukee County seized the three twelve-coil stator winders, which were substantially completed, half-finished, and little more than a frame, respectively. Lakeshore petitioned the Court to intervene and was permitted to do so. It failed, however, to file a sufficient redelivery bond, and the goods were turned over to Chrysler and removed to Indianapolis on or about October 27, 1970.

Although Chrysler attempted, after Lakeshore's intervention, to amend its pleadings to assert a claim for damages against Lakeshore for inducing Adamatic to breach its contract with Chrysler, the circuit court denied Chrysler permission to amend and entered an order on June 28, 1971, reserving to Chrysler the right to prosecute any additional causes of action against either Adamatic or Lakeshore. Nevertheless, Chrysler was permitted to amend its reply to the counterclaim of Lakeshore to include the affirmative defense of wrongful inducement of a breach of contract by Lakeshore. Moreover, in the trial of this action to the jury in circuit court, the jury specifically found that Lakeshore had wrongfully caused Adamatic to detain the property involved in both the transaction at issue and the first transaction, for which it awarded Chrysler damages in the amount of $40,000. The trial judge thereafter entered judgment denying damages on the basis that Chrysler had failed to prove any special damages by virtue of Lakeshore's wrongful detention of the machines. On appeal, the Wisconsin Supreme Court affirmed the trial court judgment in this respect but concluded that the three twelve-coil stator winders had not been unlawfully detained.

■■ As heretofore noted, jurisdiction over plaintiff's cause of action for unlawful inducement of a breach of contract is grounded upon diversity of citizenship. When acting by virtue of such jurisdiction, it is well recognized that a federal district court is simply another

court of the forum state, for which reason it applies state law and policy. Angel v. Bullington, 330 U.S. 183, 191–192, 67 S.Ct. 657, 91 L.Ed. 832 (1947). This principle has been extended by the federal courts in this circuit to application of all the doctrines of judicial finality,[3] including specifically the doctrine of collateral estoppel. *See, e. g.,* Morgan v. Inter-Continental Trading Corp., 360 F.2d 853 (7th Cir., 1966). Under Wisconsin law, even as between distinct causes of action involving the same parties and the same subject matter, a judgment in a suit brought on one cause of action operates as an estoppel in a suit on the second cause of action of those issues actually determined in the first suit, Lindemann v. Rusk, 125 Wis. 210, 237, 104 N.W. 119 (1905); Rauser v. Rauser, 52 Wis.2d 665, 670, 190 N.W. 2d 875 (1971), if entry of judgment in the first suit was dependent upon resolution of those issues. Schofield v. Rideout, 233 Wis. 550, 555, 290 N.W. 155, 133 A.L.R. 834 (1940); Keller v. Schuster, 54 Wis.2d 738, 742–743, 196 N.W.2d 640 (1972).

The Wisconsin Supreme Court has long recognized a right of action for wrongful inducement of a breach of contract. *See* Northern Wis. Co-op. Tobacco Pool v. Bekkedal, 182 Wis. 571, 581, 197 N.W. 936 (1924) and E. L. Husting Co. v. Coca Cola Co., 205 Wis. 356, 365, 237 N.W. 85, 238 N.W. 626 (1931). It delineated the elements of such cause of action in its decision in the case of Purtell v. Tehan, 29 Wis.2d 631, 638, 139 N.W.2d 655, 659 (1966):

"The essential elements of a cause of action for inducing a breach of contract are set forth in Restatement, 4 Torts, p. 49, sec. 766, as follows:

"'Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

"'(a) perform a contract with another, or

"'(b) enter into or continue a business relation with another

is liable to the other for the harm caused thereby.'"

*See also,* Wisconsin Power & Light Co. v. Gerke, 20 Wis.2d 181, 186–187, 121 N.W.2d 912 (1963) and Lorenz v. Dreske, 62 Wis.2d 273, 286, 214 N.W.2d 753 (1974). The burden of proving lack of privilege, however, is generally not ascribed to the plaintiff. Rather, proof of intentional interference with the existing contractual relations of another is sufficient to establish liability, shifting the burden of proving the justification for such interference upon the defendant:

". . . [T]oday it is generally agreed that an intentional interference with the existing contractual relations of another is prima facie sufficient for liability, and that the burden of proving that it is 'justified' rests upon the defendant. Otherwise stated, and perhaps more accurately, the defendant may show that the interference is privileged by reason of the interests furthered by his conduct, but the burden rests upon him to do so. . . ."

W. Prosser, Law of Torts 967, sec. 123 (3d ed. 1964).

*See also,* Aikins v. Wisconsin, 195 U.S. 194, 204, 25 S.Ct. 3, 49 L.Ed. 154 (1904). Thus, in order to prevail in its motion for summary judgment, defendant Lakeshore must demonstrate that the Wisconsin Supreme Court decided the issue of Lakeshore's justification to interfere in the contract between Adamatic and Chrysler such that Chrysler is now estopped to deny that defense to its cause of action stated herein. Having fully reviewed the evidence, the Court is convinced that the Wisconsin Supreme

---

3. With respect to matters involving the doctrine of *res judicata* see Watts v. I. B. M. Corporation, 341 F.Supp. 760, 761 (E.D. Wis., 1972) and Dodge v. Carri-Craft, Inc., Div. of Wis. Tanktainer, Inc., 332 F.Supp. 651, 652 (E.D.Wis., 1971), and see Capitol Indemnity Corp. v. St. Paul Fire and Marine Ins. Co., 357 F.Supp. 399, 410 (W.D.Wis., 1972) with regard to matters involving the propriety of collateral attack.

Court has in fact decided the issue of defendant's justification or privilege to interfere in the contract between Chrysler and Adamatic such that Chrysler is estopped to deny Lakeshore's defense. That being so, the Court is compelled as a matter of law to grant the motion of defendant Lakeshore for summary judgment.

██ Comment (a) to Restatement, 4 Torts, sec. 767, states the issue of privilege as "whether the actor's conduct is justifiable under the circumstances; whether, upon a consideration of the relative significance of the factors involved, his conduct should be permitted despite its expected effect of harm to another." Restatement of Torts, sec. 767, comment *a* at 63. Implicit, however, in any discussion of privilege herein is an identification of the means or conduct whereby Lakeshore induced Adamatic to breach its contract with Chrysler, which breach of contract occurred when Adamatic withheld delivery of or detained the twelve-coil stator winder.[4] See Restatement of Torts, sec. 766, comment *b* at 53. Since liability attaches by virtue of Lakeshore's inducement of Adamatic, the conduct which becomes actionable under the cause of action stated herein is restricted to that conduct directed by Lakeshore toward *Adamatic,* as is evidenced by the Restatement discussion of the nature of the conduct encompassed by sec. 766:

"f. *Means of inducement.* There is no technical requirement as to the kind of conduct that may result in inducement. It may be any conduct which conveys to the third person the actor's desire to influence him not to deal with the other. Thus, it may be a simple request or persuasion which exerts only moral pressure. Or it may be a statement unaccompanied by any specific request but having the same effect as if the request were specifically made. Or it may be a threat by the actor of physical or economic harm to the third person, or to persons in whose welfare he is interested. Or it may be the promise of a benefit to the third person if he will refrain from dealing with the other." Restatement of Torts, sec. 766, comment *f* at 57.

In view of that limitation, the only conduct, disclosed by the evidence herein, whose privilege or lack thereof must be ascertained by this Court is Lakeshore's directive to Adamatic that Adamatic detain the machines whose delivery was contracted by Chrysler. Whether Lakeshore thereafter conducted itself in an illegal fashion, under the terms of its security agreements, with respect to its negotiations with Chrysler is immaterial to the stated cause of action, such negotiations having occurred *subsequent* to the breach of contract by Adamatic and having been in no way causal of such breach. Nor, for those reasons, is this Court precluded from the entry of summary judgment herein by virtue of any factual issues which may exist with regard to what transpired between Lakeshore and Chrysler at the subsequent negotiations. Having made the foregoing determinations, it remains to consider whether the Wisconsin Supreme Court in fact determined that Lakeshore was privileged to cause Adamatic to detain the twelve-coil stator winder and thus breach its contract with Chrysler. A reading of the opinion in Chrysler Corp. v. Adamatic, Inc., *supra,* convinces this Court that it has.

As Chrysler acknowledges in its complaint herein, the jury in the state replevin action specifically found that Lakeshore had wrongfully caused Adamatic to detain the twelve-coil stator winder as well as a six-coil stator winder and a cell inserter covered by the first transaction between Chrysler and

---

4. Plaintiff acknowledged on appeal to the Wisconsin Supreme Court that the breach of contract between Adamatic and Chrysler occurred when Adamatic withheld delivery of the machines or detained them, as evidenced by its statements at p. 21 of the Appellant's Brief, filed therein on September 12, 1972. Since neither party contests that fact in these proceedings, it remains undisputed and will be accepted as such herein.

Adamatic, which transaction is not at issue, for which it awarded Chrysler damages in the amount of $40,000. That award of damages, however, was later reduced and then denied by the trial judge. On appeal to the Wisconsin Supreme Court, that ruling and others were specifically challenged by Chrysler.

In deciding the illegality of Chrysler's seizure of the three twelve-coil stator winders, the Wisconsin Supreme Court pointedly determined that under its perfected security agreements, Lakeshore, not Chrysler, was entitled to possession of the three twelve-coil stator winders. Chrysler Corp. v. Adamatic, Inc., *supra* 59 Wis.2d at 243, 208 N.W.2d 97. Moreover, it determined that had Chrysler not seized possession of the machines, Lakeshore could have taken possession of the goods and sold them in accord with its status as a secured creditor under the Wisconsin Uniform Commercial Code:

" . . . In the absence of Chrysler's claim, Lakeshore's right to the possession of the twelve-coil winders would be unquestioned.

"It was conceded that Lakeshore had loaned substantial sums to Adamatic and, under ch. 409, Stats., had perfected a valid security interest in Adamatic's inventory. It was stipulated by the parties that, prior to the replevin, the twelve-coil winders were a part of that inventory. *Had Chrysler not seized the machines under its claim of right, upon Adamatic's default Lakeshore could have taken possession of the machines under sec. 409.503 and sold them under the provisions of sec. 409.504 to satisfy, in part at least, Adamatic's obligations.*" (Emphasis added). *Id.* at 237, 208 N.W.2d at 105.

As to the specific contention by Chrysler that it was entitled to damages as against Lakeshore for the wrongful detention of goods by Adamatic, the supreme court implicitly overturned the determination of the jury with respect to the twelve-coil stator winders, finding instead that only the six-coil winder and cell inserter had been wrongfully detained:

"Chrysler also argues that it is entitled to damages for the few days of unlawfully withheld possession of the goods by Adamatic. Although we conclude that Chrysler was entitled to the six-coil winder and the cell inserter *(and it is only these items that were unlawfully withheld)*, the trial judge properly concluded that Chrysler failed to prove any special damages for the unlawful detention." (Emphasis added). *Id.* at 243, 208 N.W.2d at 109.

If the detention of the twelve-coil stator winder by Adamatic at the insistence of Lakeshore was thus lawful because of Lakeshore's right to possession of the machine, it follows necessarily that Lakeshore was justified in directing Adamatic not to ship the machine to Chrysler. In deciding Lakeshore's rights under its perfected security agreement as against Chrysler, the Wisconsin Supreme Court also decided Lakeshore's privilege to interfere in Adamatic's contract with Chrysler, and plaintiff is herein estopped to deny that privilege.

 Nor does application of the principle of collateral estoppel deprive plaintiff of property without due process of law.[5] The principles of judicial finality are premised upon "the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court." Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946).

5. Inasmuch as paragraph 20 of plaintiff's complaint might be read to seek a declaration of this Court that application of the principle of collateral estoppel would deprive plaintiff of property without due process of law, this issue too must be considered. Jurisdiction of this phase of plaintiff's action is premised upon the existence of a federal question.

By definition, the principles of judicial finality become operative only *after* the requirements of due process have been fulfilled. In the instant action, the doctrine of collateral estoppel bars plaintiff from relitigating against Lakeshore the same issues of rights that it litigated against Lakeshore in the state action. Having been accorded a full hearing on those issues in the state courts, Chrysler has suffered no deprivation of due process.

 One final matter which remains to be decided by this Court is whether defendant should be permitted to recover the actual costs of defending this action from the attorneys for Chrysler under the provisions of 28 U.S.C. § 1927, which provides as follows:

"§ 1927. Counsel's liability for excessive costs

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs."

The Seventh Circuit Court of Appeals undertook a comprehensive discussion of this statute in 1507 Corporation v. Henderson, 447 F.2d 540 (7th Cir., 1971). It was determined therein that sec. 1927 created no penalty in favor of the prevailing party nor provision for taxation of costs other than those regularly allowed. It simply provided for the taxation of otherwise allowable costs against counsel personally rather than the party for whom he appeared:

" . . . In our opinion the section does not deal with the question of the nature or amount of costs to be al-lowed, but authorizes imposition of otherwise allowable costs on counsel personally in place of the party for whom he appeared where the circumstances mentioned in the section have occurred.

"As succinctly put by another court, the section 'merely authorizes the taxing of such excess of costs as arose from unreasonable and vexatious conduct of an attorney to the attorney himself, as opposed to his client, and does not create any penalty in favor of the prevailing party, nor does it sanction the taxing of any additions over regular costs.' " *Id.* at 542.

Attorney fees incurred by defendant in defense of this action would not, therefore, be recoverable against plaintiff's counsel, as it is the general rule that " 'attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.' " *Id.* at 543. See also 6 Moore's Federal Practice ¶ 54.77[2], pp. 1703–1704. Moreover, there is no evidence that the institution of this action in federal court, which defendant claims was vexatious, was prompted by Chrysler's counsel rather than or without the consent of Chrysler Corporation such that costs should be taxable as against counsel personally rather than Chrysler. The Court therefore declines to tax the ordinary costs of this action against plaintiff's counsel under 28 U.S.C. § 1927.

Now, therefore, it is ordered that defendant's motion for summary judgment be and hereby is granted and that this action be and hereby is dismissed on its merits.

It is further ordered that defendant's request for excessive costs pursuant to 28 U.S.C. § 1927 be and hereby is denied.