**RAILWAY EXPRESS AGENCY, INC.,**
Plaintiff–Appellant,

v.

**SUPER SCALE MODELS, LTD.; and**
Charles C. Merzbach,
Defendants–Appellees.

No. 89-2534.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1990.

Decided June 10, 1991.

Rehearing Denied July 18, 1991.

Thomas Armstrong, Quarles & Brady, Milwaukee, Wis., for plaintiff-appellant.

Bruce Chudacoff, Chudacoff & Liebzeit, Appleton, Wis., for defendant-appellee.

Before FLAUM and KANNE, Circuit Judges, and NOLAND, Senior District Judge.*

* The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation.

KANNE, Circuit Judge.

The events underlying this dispute began when Railway Express Agency, Inc. ("REA"), a Wisconsin corporation, and E.P. Lehmann, a German manufacturer of toy trains, entered into a written contract on June 19, 1984. Under the contract, REA agreed to purchase more than one million dollars worth of LGB equipment annually. In return, E.P. Lehmann granted REA the exclusive right to purchase, import, and sell all LGB model railroad equipment in the United States, as well as the right to use and enforce the LGB trademark.

Although the parties stipulated that the 1984 contract granted the exclusive right to sell LGB equipment in the United States to REA, the agreement did not explicitly state that REA had the exclusive right to sell LGB equipment in the United States. Rather, the agreement merely gave REA the exclusive right to purchase "all LGB equipment sold by Lehmann in the United States." However, a second agreement which conferred control of the LGB trademark to REA did purportedly grant REA the exclusive right to import LGB equipment into the United States. E.P. Lehmann's model railroad equipment was manufactured under the trademark and tradename "LGB." This mark was registered in West Germany, but was not registered in the United States. As a result, REA's right to be the exclusive seller of LGB equipment in the United States was never enforceable under the trademark laws.

Sometime prior to October 1985, REA became aware that Super Scale, a New York corporation, was selling LGB merchandise in the United States. REA's subsequent investigation revealed that Super Scale was engaged in gray market importing. That is, rather than purchasing merchandise directly from E.P. Lehmann, Super Scale was obtaining LGB model equipment from various European model railroad dealers (who had purchased the equipment from E.P. Lehmann) and was then importing and reselling the LGB merchan-

dise in the United States. Later that month, REA brought suit against Super Scale and Charles C. Merzbach, an officer and sole shareholder of Super Scale, alleging that both defendants had intentionally interfered with REA's performance of its contract with E.P. Lehmann. Despite the actual knowledge of REA's exclusive contract provided by the lawsuit, Super Scale continued to sell LGB merchandise throughout the period that the agreement remained in effect. E.P. Lehmann eventually terminated the contract on January 4, 1988.

As the district court aptly noted, "[f]rom the day this case was commenced, [REA] has been in search of a cause of action." REA's first complaint alleged that Super Scale and Merzbach had committed trademark infringement, engaged in false advertising, and interfered with its prospective contractual relations. In response, the defendants counterclaimed against REA for restraint of trade. REA later amended its complaint to add a claim of unfair competition.

None of these claims, however, made it to trial. REA's statutory claims for trademark infringement and misrepresentation were abandoned because REA had failed to register the LGB trademark in the United States and, consequently, lacked standing to pursue these claims. REA was also unable to establish that it had been injured by illegal gray market importing under 19 U.S.C. § 1526(a), despite delaying trial for several months in order to await three pending Supreme Court decisions. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). Eventually, after the parties failed to submit a final pretrial report, REA abandoned its state law claim for tortious interference with prospective contractual relations between itself and future customers. Instead, REA and Super Scale agreed to dis-

miss all claims and counterclaims except for REA's allegation that Super Scale and Merzbach had "interfered with REA's contractual rights and/or committed acts of unfair competition when defendants sold LGB merchandise in the United States" after October 17, 1984.[1] The parties stipulated to all the facts they considered material, submitted them to the district judge and requested him to resolve the claim as a matter of law.

Treating the submission of the matter to him as a bench trial, the district judge found that REA had failed to state a claim and entered judgment against REA dismissing its claim. In support of this action, the court noted that "neither New York's nor Wisconsin's highest state court ha[d] adopted § 766A of the *Restatement (Second) of Torts*," and stated that it would not attempt to determine whether either state would adopt the Restatement provision because "[t]he policy of the Seventh Circuit is that plaintiffs desirous of succeeding on novel state law claims should present those claims initially in the state court." Reasoning that this was "not the proper case ... to develop an area of law that it ha[d] no responsibility for developing" and that it was "not free to create remedies that do not exist under state law," the court entered judgment against REA.

■ On appeal REA argues that the district court erred when it refused to determine whether the highest courts of Wisconsin and New York would adopt § 766A which provides that "[o]ne who intentionally and improperly interferes with the performance of a contract ... between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting

---

1. In its opinion, the district court noted that this claim had never been asserted in any pleading or incorporated into a pretrial order, but considered the claim to be tried by the implied consent of the parties because the defendants had waived any issues of prejudice. Fed.R. Civ.P. 15(b). However, REA's allegation that Super Scale had "committed acts of unfair competition" may also have involved this claim. *See, e.g., Frandsen v. Jensen–Sundquist Agency, Inc.*, 802 F.2d 941, 948 (7th Cir.1986) ("In cases where no breach of contract results from the interference, the tort is really a branch of the law of unfair competition.").

to him." *Restatement (Second) of Torts*, § 766A (1979). We disagree.

In the past we have held it proper for a district court to determine how a state's highest court would decide a similar issue. *See American Fletcher Mortg. Co. v. U.S. Steel Credit Corp.*, 635 F.2d 1247, 1252 (7th Cir.1980) (district court properly recognized cause of action based on contractual interference where the defendant did not actually induce a breach of contract, although the Indiana Supreme Court had not yet recognized the cause of action), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1982, 68 L.Ed.2d 300 (1981). *American Fletcher*, however, stated only that the district court *could* determine how the state's highest court would rule on the question raised; it did not require district courts to do so in all cases. *Id.* Indeed, more recent opinions of this court have strongly encouraged district courts to dismiss actions based on novel state law claims. *See Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir.1987); *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir.1985); *Landess v. Borden, Inc.*, 667 F.2d 628, 631 n. 3 (7th Cir.1981). Accordingly, it was not error for the district court to refuse to predict whether the courts of New York or Wisconsin would adopt § 766A.

In any event, it makes no difference because, unlike the district court, we believe that both Wisconsin and New York have recognized REA's stated cause of action. For though no court in either Wisconsin or New York has ever expressly adopted § 766A, the courts of both states have acknowledged that intentional and improper interference with an existing contract by conduct rendering the contract less profitable to the plaintiff is actionable as a common-law tort. For example, in *Wisconsin Power & Light Co. v. Gerke*, 20 Wis.2d 181, 121 N.W.2d 912 (1963), Gerke, a contractor, sought to collect damages from a Wisconsin utility which had slowed his construction of an interstate highway when it refused to move power lines. As a result, Gerke was forced to bear an increase in his construction costs which made his performance of the contract less profitable. In discussing Gerke's claim, the Wisconsin supreme court

> recognized that "... the value of a bargain may be impaired although there is no failure of performance. In such a case, it may be the promisor rather than the promisee who sustains the loss. *Thus, any conduct which is intended to and which, in fact, makes performance more onerous is, unless privileged, a tort against the promisor.*"

*Gerke*, 121 N.W.2d at 915–16 (citing Harper & James, 1 *Torts* 499, § 6.9) (emphasis added). The court concluded that while it had "no difficulty with the concept of [this] cause of action," its application was inappropriate under the facts of the case. *Id.* 121 N.W.2d at 916; *see also Lorenz v. Dreske*, 62 Wis.2d 273, 214 N.W.2d 753, 759–60 (1974) ("[A]ny conduct which is intended to and which makes performance of a contract more onerous is a tort against the promisor unless privileged.").

Like the Wisconsin courts, the New York courts have recognized a similar, common-law tort. In *Metropolitan Opera Ass'n v. Wagner–Nichols Recorder Corp.*, 199 Misc. 786, 101 N.Y.S.2d 483 (1950), *aff'd*, 279 App.Div. 632, 107 N.Y.S.2d 795 (1951), the defendant recorded radio broadcasts of Metropolitan operas and sold the recordings although it knew that the opera company had granted the exclusive right to record its productions to Columbia Records. Acknowledging that

> there may be prima facie liability for interference with contract relations without inducing breach of contract by, for example, injuring persons under contract so that they are disabled from performing, or by destroying or damaging property which is the subject matter of a contract, *or by doing other acts which make performance more burdensome, difficult or impossible or of less or no value to the one entitled to performance,*

the court held that the defendants' "conduct interfere[d] with Columbia Records' enjoyment of the benefits of its exclusive contract as plainly as if the defendants had persuaded the Metropolitan Opera to break

its contract." *Id.* 101 N.Y.S.2d at 498 (citation omitted) (emphasis added); *see also De JurAmsco Corp. v. Janrus Camera, Inc.,* 16 Misc.2d 772, 155 N.Y.S.2d 123, 125 (1956); *Dior v. Milton,* 9 Misc.2d 425, 155 N.Y.S.2d 443, 460 (1956); *but see Burns, Jackson, Miller, Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 722, 451 N.E.2d 459, 469 (1983) (court refused to recognize tort in situation where a labor strike incidentally interfered with the general business relationships of two law firms). More recently, several federal court decisions applying New York law have also recognized the existence of a cause of action similar to § 766A under New York law. In *Goodall v. Columbia Ventures, Inc.,* 374 F.Supp. 1324, 1332 (S.D.N.Y.1974), the court noted that " 'an unlawful interference with a person in the performance of his contract with a third party is just as much a legal wrong as is an unlawful inducement of a breach of that contract by the third party.' " *Id.* (citing *Morris v. Blume,* 55 N.Y.S.2d 196, 199 (Sup.Ct.), *aff'd,* 269 App.Div. 832, 56 N.Y. S.2d 413 (1945). The court then held that allegations that a party's actions rendered performance of a contract more costly and reduced the benefits of the contract were sufficient to state a claim for interference with contractual relations. *Id.; see also Maison Lazard et Compagnie v. Manfra, Tordella & Brooks, Inc.,* 585 F.Supp. 1286, 1290–91 (S.D.N.Y.1984) (court held that when defendant knew third party had the exclusive right to sell product and knew its actions in selling the same product would make it impossible for the third party to reap the full benefits of its contract, action stated a claim for interference with contractual relations). Thus, we are convinced that New York law also recognizes REA's cause of action.

Our review of this case, however, need not end with the determination that REA has stated a claim recognized by the courts of both Wisconsin and New York. In the district court, the parties stipulated to all the facts they considered material and submitted the outstanding legal issue to the district court; thus, this case reaches us after a decision on the merits by the district court. Rather than remand to the district court for further proceedings, in the interests of judicial economy we proceed to determine whether, under the stipulated facts, REA has demonstrated that Super Scale and Merzbach interfered with its contract by selling LGB model train equipment in the United States.

■ The parties did not address the question of which state's law should apply, so as an initial matter we must determine whether to apply the law of New York or the law of Wisconsin. Since we believe that both New York and Wisconsin have adopted a cause of action similar to that described by § 766A (although not § 766A itself), there is no conflict of laws. Where the law of the two states is essentially the same, we apply the law of the forum state. *International Admrs., Inc. v. Life Ins. Co.,* 753 F.2d 1373, 1376 n. 4 (7th Cir.1985). We therefore examine REA's claim under the law of Wisconsin.

■ REA's sole remaining claim is that Super Scale intentionally and improperly interfered with REA's performance of its existing contract with E.P. Lehmann. Specifically, REA contends that Super Scale and Merzbach were aware of the existence and exclusivity provisions of the REA–E.P. Lehmann contract but nevertheless continued to import and sell LGB model railroad equipment in the United States. This intentional conduct, REA argues, diminished the value of its contract by reducing the profits it would have otherwise made as the exclusive seller of LGB equipment in the United States; thus, its performance of the contract was made more burdensome.

Although Wisconsin has recognized REA's cause of action, only the general contours of the tort have been developed. The case law indicates that REA must show that Super Scale intentionally interfered with its contract and that its performance of the contract was made more onerous or burdensome. *See Lorenz v. Dreske,* 62 Wis.2d 273, 214 N.W.2d 753, 759–60 (1974); *Wisconsin Power & Light Co. v. Gerke,* 20 Wis.2d 181, 121 N.W.2d 912 (1963). But, other important issues remain

unanswered. For example, the question of which party bears the burden of proving that the defendant's conduct is improper is an unsettled issue of law. *Compare Federal Pants, Inc. v. Stocking,* 762 F.2d 561, 569 (7th Cir.1985) (in § 766 cause of action, "[o]nce plaintiff has proved intentional interference with existing contractual relations, the burden of proving the justification for such interference is upon the defendant") (citing *Chrysler Corp. v. Lakeshore Commercial Fin. Corp.,* 389 F.Supp. 1216 (E.D.Wis.1975), *aff'd,* 549 F.2d 804 (7th Cir.1977)), *with Mendelson v. Blatz Brewing Co.,* 9 Wis.2d 487, 101 N.W.2d 805, 808 (1960) ("plaintiff must establish that instead of acting 'within the privilege' the defendant acted outside of it, that is to say from 'an improper motive' ") (citation omitted); *see also Restatement (Second) of Torts,* § 767, comment b (1979). The issue of what constitutes improper conduct is also unresolved. Must the defendant's actions involve wrongful means such as fraud or physical coercion? *See, e.g., Pure Milk Products Cooperative v. National Farmers Org.,* 64 Wis.2d 241, 219 N.W.2d 564, 573 (1974) (discussing *Restatement* § 766 cause of action); *Liebe v. City Finance Co.,* 98 Wis.2d 10, 295 N.W.2d 16, 19 (Wis.App.1980) (discussing § 766 cause of action). Or, is competition considered to be improper whenever it interferes with an existing contractual relationship? *See, e.g., Frandsen v. Jensen–Sundquist Agency, Inc.,* 802 F.2d 941, 947 (7th Cir.1986) ("competition is not a defense to a charge of interfering with an existing contract" in the context of a § 766 cause of action).

We need not resolve these issues, however, because REA has failed to prove an essential element of its claim—causation. *Cudd v. Crownhart,* 122 Wis.2d 656, 364 N.W.2d 158, 160 (Wis.App.1985). REA was required to prove that Super Scale caused its performance of the contract with E.P. Lehmann to be more onerous or burdensome. *Lorenz,* 214 N.W.2d at 759; *Gerke,* 121 N.W.2d at 916. The facts, however, do not demonstrate that Super Scale was the cause of any injury to REA. REA could have established the requisite damage in any of a number of ways. For example, it could have presented evidence that Super

Scale had sold an inferior product under the LGB tradename. *See, e.g., Metropolitan Opera,* 199 Misc. 786, 101 N.Y.S.2d 483 (1950) (competitor's recordings of broadcasts were inferior). But the facts do not demonstrate that Super Scale damaged REA's ability to sell E.P. Lehmann's product by selling an inferior grade of LGB merchandise or by creating consumer confusion concerning the quality of LGB equipment. REA could also have established its injury by demonstrating that Super Scale made sales to REA's existing clientele—but it did not make such an attempt.

Instead, REA argues that its evidence of Super Scale's sales of LGB model equipment in the United States proves, as a matter of law, that its performance of the exclusive contract was made less profitable. That is, any competition by Super Scale necessarily lessened the economic value of the contract and made REA's performance of the contract less profitable. We disagree. The stipulated facts show only that Super Scale made sales in the United States, they do not indicate that REA would have made any of these sales but for Super Scale's interference. Although Super Scale would have us believe that it would have, its argument is supported only by conjecture, not by the stipulated facts. While this information may provide sufficient grounds to survive a motion for summary judgment, *see Maison Lazard,* 585 F.Supp. at 1291, it is an insufficient evidentiary basis to impose liability on Super Scale for intentional and improper interference with REA's contract.

In any event, REA's analysis of the facts proves too much. Under its interpretation, REA would have us conclude that it had "proven" it was unable to perform its contract with E.P. Lehmann due to Super Scale's interference simply because the parties had stipulated that the contract was terminated. But, the facts before us do not prove that Super Scale's actions caused (or even contributed to) the termination of the two companies' arrangement. Indeed, if that had been the case, REA could have brought a *Restatement (Second) of Torts* § 766 cause of action against Super Scale and have avoided the unsettled issue of

whether New York or Wisconsin recognized the viability of its cause of action.

Finally, REA relies on *Sprecher v. Weston's Bar, Inc.*, 78 Wis.2d 26, 253 N.W.2d 493 (1977), to support its claim that Merzbach, as an officer and director of Super Scale, should be held personally liable for the actions of the corporation. In *Sprecher*, the Wisconsin supreme court held that directors and officers could be liable for improperly causing a corporation to violate its own contracts in situations where the court would otherwise not pierce the corporate veil. *Id.* 253 N.W.2d at 499–500. Our conclusion that Super Scale did not tortiously interfere with REA's contractual relations moots any issue of whether Merzbach can be held personally liable for the actions of his company. We therefore need not determine whether the rule laid down in *Sprecher* extends to this factual situation.

For the foregoing reasons stated herein, the judgment of the district court dismissing REA's claim is AFFIRMED.