MAGNUM RADIO, INC., David R. Magnum and Lynn Magnum, Plaintiffs-Appellants,

v.

Ronald BRIESKE, Defendant-Respondent.

Court of Appeals

*No. 97–2754. Submitted on briefs December 10, 1997.—Decided February 19, 1998.*

(Also reported in 577 N.W.2d 377.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William P. Skemp* and *Sonja Davig Huesmann, of William Skemp Law Firm, S.C.,* of La Crosse.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jay S. Carmichael,* of *Carmichael Law Offices, S.C.,* of Tomah.

Before Eich, C.J., Vergeront and Roggensack, JJ.

EICH, C.J.   Magnum Radio sued Ronald Brieske, claiming, among other things, that Brieske had intentionally interfered with Magnum's contract to purchase two radio stations in Tomah, Wisconsin. The trial court dismissed the action for failure to state a claim upon which relief could be granted, and Magnum appeals. We agree with Magnum that its complaint states a claim. We also conclude that material issues of fact remain to be tried and we therefore reverse the order and remand to the circuit court for further proceedings.

The underlying facts are largely undisputed. When Brieske—who was admittedly interested in purchasing one of the two stations himself—learned of Magnum's proposed purchase of the stations, he wrote to the Federal Communications Commission to express opposition to the purchase. The FCC is the agency charged with the licensing and regulation of radio stations and, under federal law, must approve the transfer of any station's license. *See* 47 U.S.C. § 307. Brieske's letter was based on his concern that if Magnum purchased the stations it would not provide adequate local news and sports coverage in the Tomah area. "[T]his buyout," Brieske said, "is going to mean the isolation of the Tomah community from local activities."

133

After being notified of Brieske's objection, David Magnum, a Magnum owner, contacted Brieske, and while the parties dispute the precise nature of their conversation, it appears that Magnum told Brieske that local news and sports coverage would continue under his ownership of the stations. He attempted to persuade Brieske to withdraw his opposition, but Brieske refused.

The FCC, taking the position that program formatting is not a material issue in license transfer approvals, ultimately rejected Brieske's opposition and approved the transfer. Magnum then brought this action, stating in its complaint that:

> [Brieske's] actions in objecting to the . . . sales and license transfers were done with the intent to knowingly, intentionally and willfully interfere with the business and economic relations between [Magnum] and the sellers . . . . While Brieske acted under the guise of a concerned citizen, his true intention was to quash the agreement . . . and . . . purchase the stations himself.

Magnum claimed that the delay in the FCC's approval of its purchase of the stations caused it to lose revenues and incur added legal expenses.

Brieske moved to dismiss Magnum's complaint, arguing that it failed to allege the facts necessary to state a claim for interference with contractual relations. He also contended that his opposition to the license transfers was a guaranteed First Amendment right. The circuit court held a hearing on the motion to dismiss, and both parties submitted affidavits for the court's consideration. The circuit court granted the motion, noting that Brieske had not attempted to "persuade the sellers [of the stations] to back out of the deal

or in any way to sabotage the agreement," and concluding that "in this case . . . there is just no way under these facts that there is a cause of action."

While Brieske's motion was captioned as one to dismiss the complaint—a motion confined to the pleadings themselves—the trial court also had before it the affidavits of the parties relating to their claims. Under § 802.06(3), STATS., when, "on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."

■

In considering summary-judgment motions, we apply the same methodology as the trial court, and we consider the issues *de novo. Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). We look first to the pleadings to determine whether the complaint states a claim for which relief may be granted and, if so, whether the answer joins the issue. If those questions are answered in the affirmative, we then look to the evidentiary facts stated in the moving party's affidavits to see whether he or she has made a *prima facie* case for summary judgment. If so, we examine the opposing party's affidavits and proofs to see whether a genuine issue of material fact exists, or whether reasonable conflicting inferences may be drawn from undisputed facts. If such factual issues exist, summary judgment is improper and the case should be tried. If, on the other hand, the material facts or inferences are not in dispute, we consider the legal issue or issues raised by the motion and may grant judgment to either party. *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 511, 383 N.W.2d 916, 917 (Ct. App. 1986).

135

■

In the first step of the process—considering the sufficiency of the complaint—we apply the same principles that govern consideration of motions to dismiss for failure to state a claim: we will grant the motion only if, taking the pleaded facts as true and construing the allegations liberally, giving the plaintiff the benefit of all inferences, it is " 'quite clear' that under no conditions can the plaintiff prevail." *Joyce v. County of Dunn*, 192 Wis. 2d 699, 704, 531 N.W.2d 628, 630 (Ct. App. 1995) (quoted source omitted). *See also Heinritz v. Lawrence Univ.*, 194 Wis. 2d 606, 610–11, 535 N.W.2d 81, 83 (Ct. App. 1995). And, under Wisconsin's liberal "notice pleading" rules, all that is required of a complaint is that it give "fair notice" of the claim being advanced. *Hertlein v. Huchthausen*, 133 Wis. 2d 67, 72, 393 N.W.2d 299, 301 (Ct. App. 1986) (quoted sources omitted).

■

Wisconsin has long adhered to the basic interference-with-contract rule of RESTATEMENT (SECOND) OF TORTS § 766 (1979), which states: "One who intentionally and improperly interferes with the performance of a contract . . . by inducing or otherwise causing the third person not to perform the contract, is subject to liability." *See Augustine v. Anti-Defamation League*, 75 Wis. 2d 207, 218–22, 249 N.W.2d 547, 553–55 (1977); *Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 788, 541 N.W.2d 203, 209 (Ct. App. 1995); *Cudd v. Crownhart*, 122 Wis. 2d 656, 659–60, 364 N.W.2d 158, 160 (Ct. App. 1985). The question in this case is whether a person whose alleged interference with a contractual relationship results not in abandonment or nonperformance of the contract but only in making the

plaintiff's performance of the contract more expensive or onerous may also be held liable for his or her actions.

The rule of RESTATEMENT (SECOND) OF TORTS § 766A (1979) answers the question in the affirmative: "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person, by preventing the other from performing the contract, *or causing his [or her] performance to be more expensive or burdensome,* is subject to liability to the other for the [resulting] pecuniary loss . . . ." (Emphasis added.) The comments to § 766A indicate that the rule is complementary to § 766:

> Under § 766, the plaintiff's interest in obtaining performance of the contract is interfered with directly. Under . . . Section [§ 766A] . . . .
> [t]he next logical step has . . . been taken. If the plaintiff's performance has intentionally been made more burdensome or more expensive by the actor, the cost that he incurs in order to obtain the performance by the third party has increased, and the net benefit from the third person's performance has been correspondingly diminished. This Section covers that loss, too.

*Id.* at § 766A cmt. c. As the comment also notes, "[T]he interference with receiving the benefits of obtaining the performance [recognized by § 766A as imposing liability on the defendant] is just as real as in a case coming under § 766." *Id.*

Although no reported Wisconsin case has expressly adopted RESTATEMENT (SECOND) OF TORTS § 766A, we believe the rule has been adopted by clear implication, and we confirm that adoption in this opinion.

■

In *Wisconsin Power & Light Co. v. Gerke*, 20 Wis. 2d 181, 121 N.W.2d 912 (1963), a utility sued Gerke, a highway-construction contractor, to recover damages sustained when Gerke knocked down a pole, disrupting the utility's transmission line. Gerke counterclaimed, alleging that the utility intentionally delayed his performance of the highway contract by refusing to remove its line on demand. The supreme court, recognizing that Gerke was "seek[ing] redress because the performance of his contract was made less profitable" by the utility's actions, acknowledged that

> the value of a bargain may be impaired although there is no failure of performance. In such a case it may be the promisor rather than the promisee who sustains the loss. Thus any conduct which is intended to and which, in fact, makes performance more onerous is, unless privileged, a tort against the promisor.

*Id.* at 187, 121 N.W.2d at 915–16 (quotation and quoted source omitted).[1] Magnum, like Gerke, claims injury

---

[1] The court, stating that it had "no difficulty with the concept of the cause of action Mr. Gerke asserts," went on to hold that the evidence was insufficient to support Gerke's claim for relief. *Wisconsin Power & Light Co. v. Gerke*, 20 Wis. 2d 181, 187, 188–90, 121 N.W.2d 912, 916, 916–17 (1963). We reached a similar result in *Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 541 N.W.2d 203 (Ct. App. 1995). In that case, the plaintiff claimed that the acts of the defendant bank in calling in several of his obligations on property he had contracted to sell to a third party resulted in the final sale being concluded on terms less favorable than stated in the parties' original letter of intent. The jury found in the plaintiff's favor and, not reaching the legal merits of the claim, we reversed on a limited issue, concluding that the evidence was insufficient to establish that the bank

resulting from Brieske's actions, which it alleges slowed performance of its contract to purchase the stations and ultimately reduced the benefit of its bargain.

In a subsequent case, *Lorenz v. Dreske,* 62 Wis. 2d 273, 286, 214 N.W.2d 753, 759–60 (1974), the supreme court, citing *Gerke,* affirmed the trial court's overruling of a demurrer to the plaintiff's claim for intentional contract interference, stating,

> One who, without a privilege to do so, induces another or causes a third person not to perform a contract with another is liable for the harm caused thereby *and any conduct which is intended to and which makes performance of a contract more onerous is a tort against the promisor unless privileged.*

(Emphasis added.)[2] And, in *Railway Express Agency, Inc. v. Super Scale Models, Ltd.,* 934 F.2d 135, 139 (7th Cir. 1991), the court of appeals, citing *Gerke* and *Lorenz,* concluded that "Wisconsin ha[s] adopted a cause of action similar to that described by [RESTATEMENT (SECOND) OF TORTS] § 766A (although not § 766A itself)."

We are satisfied, then, that a RESTATEMENT (SECOND) OF TORTS § 766A cause of action exists in Wisconsin: one who, not being privileged to do so,[3]

---

acted with the requisite intent to interfere with the plaintiff's contract. *Id.* at 788–91, 541 N.W.2d at 209–11.

[2] The court did not describe the precise nature of the claimed interference in detail, noting only that the plaintiff's complaint alleged that the defendant's acts "prevented the plaintiffs from *properly performing* the provisions of their contract[ ]." *Lorenz v. Dreske,* 62 Wis. 2d 273, 285, 214 N.W.2d 753, 759 (1974) (emphasis added).

[3] As indicated above, the *Lorenz* court stated that "any conduct which is intended to and which makes performance of a

intentionally and improperly interferes with another's performance of a contract, which interference either prevents the performance of the contract, or causes the other's performance to be more expensive or burdensome, may be subject to liability for the pecuniary loss caused thereby.

We are equally satisfied that Magnum's complaint states a cause of action for interference. It alleges that, after receiving a copy of Brieske's letter to the FCC, David Magnum told Brieske that Magnum Radio would broadcast high school sports in the Tomah area, but Brieske refused to withdraw his objection because "he would be 'giving up his leverage' if he did." The complaint also alleges that Brieske refused to discuss the matter further with David Magnum, despite attempts on Magnum's part to do so, and that while Brieske was acting "under the guise of a concerned citizen, his true intention was to quash [Magnum Radio's purchase] agreement . . . and to allow Brieske to purchase the stations himself." We believe that, under Wisconsin's liberal pleading rules, the complaint states a claim for intentional interference with Magnum's contract to purchase the stations by making the performance of that contract more expensive or burdensome.

Brieske's answer denies the material factual allegations and raises several "affirmative defenses," among them that he had a "legally protected right"

contract more onerous is a tort against the promisor *unless privileged." Lorenz,* 62 Wis. 2d at 286, 214 N.W.2d at 759–60 (emphasis added). *See also Liebe v. City Fin. Co.,* 98 Wis. 2d 10, 15–16, 16 n.7, 295 N.W.2d 16, 19, 19 (Ct. App. 1980), for the proposition that only one " 'who, *without a privilege to do so,' "* intentionally interferes with a contract may be liable in tort. (Quoted sources omitted.) (Emphasis in original.)

under federal law and the constitution to express his views to the FCC. We thus consider the parties' affidavits to determine: (1) whether Magnum has stated a *prima facie* case for recovery; and, if so, (2) whether Brieske's affidavit raises a triable issue of fact.

David Magnum's affidavit reasserts the allegations in the complaint concerning Brieske's interest in purchasing the stations himself and his statement that, despite his assurances that Magnum Radio would broadcast local sports events, Brieske refused to withdraw his FCC opposition because he did not want to give up his "leverage." It also recounts that Brieske refused to discuss the matter further and that Brieske's opposition caused delay that resulted in financial and other damage to Magnum. Magnum's affidavit states a *prima facie* case for recovery.

■

Brieske argues that Magnum's action was properly dismissed for failure to state a claim because he (Brieske) had a "legally protected right"—*i.e.*, a privilege—to file his objection with the FCC, and he states in his affidavit that he learned about the proposed purchase of the stations from a public notice in a local newspaper and contacted the FCC only to express his concerns about coverage of local sports events. We recognized in *Liebe v. City Finance Co.*, 98 Wis. 2d 10, 16–17, 295 N.W.2d 16, 19 (Ct. App. 1980), that "transmission of truthful information" can be the type of privilege the supreme court discussed in *Gerke*, when it said that "one who, without a privilege to do so," interferes with a contract may be liable. *Gerke*, 20 Wis. 2d at 186–87, 121 N.W.2d at 915 (quotation and quoted source omitted).[4]

---

[4] We also recognized the converse in *Liebe*, noting that "improper means of interfering with contracts include transmis-

We see the affidavits as raising material factual issues as to whether Brieske's letter to the FCC was improper or was "privileged" within the meaning of applicable case law, as well as whether his actions constituted a tortious interference with Magnum's contract resulting in pecuniary loss. Brieske's position is that he was simply acting as a concerned citizen, responding to the FCC's invitation to comment on the transfer. Magnum's position is that Brieske's interest was something else altogether: he acted as a potential, if not an actual, competitor who desired to squelch Magnum's purchase in order to acquire the stations himself. Those issues are rife with factual questions that should be resolved at trial, not on a pretrial motion.

Because Magnum's complaint states a cause of action, and because of the existence of genuine disputes as to the material facts, the action was not subject to dismissal, whether by order or summary judgment. We therefore remand this case for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.

---

sion of false information." *Liebe*, 98 Wis. 2d at 16, 295 N.W.2d at 19.