TELE–PORT, INC., Plaintiff,

v.

AMERITECH MOBILE COMMUNI-
CATIONS, INC. and Car Phones
+, Inc., Defendants.

No. 98–C–1097.

United States District Court,
E.D. Wisconsin.

Feb. 17, 1999.

Robert B. Corris, Milwaukee, WI, for Tele–Port, Inc.

Elizabeth L. Wolf, Jon P. Christiansen, Cynthia J. Franecki, Foley & Lardner, Milwaukee, WI, for Ameritech Mobile Communications, Inc.

John T. Bode, Bode Carroll McCoy & Hoefle, Waukesha, WI, for Car Phones + Inc.

## DECISION AND ORDER

ADELMAN, District Judge.

At the heart of this case are "market development fund" payments allegedly made by Ameritech Mobile Communications, Inc., to its sales agent Car Phones +, Inc. in an amount greater than payments Ameritech made to another sales agent, Tele–Port, Inc. Tele–Port initially sued Ameritech in Milwaukee County Circuit Court over the unequal payments, asserting breach of their written contract and violation of the Wisconsin Fair Dealership Law, Wis. Stat. §§ 135.03 & 135.04, and the "secret rebate" law, Wis. Stat. § 133.05. An Amended Complaint added a tortious interference claim against Car Phones. Both defendants removed the case to this court and Tele–Port moved to remand. Defendants responded to the remand motion and filed motions to dismiss. The motions are now fully briefed.[1]

■ Defendants removed this case based on diversity jurisdiction, 28 U.S.C. § 1332. It is undisputed that more than $75,000 is involved. But according to the Amended Complaint and Notice of Removal, plaintiff Tele–Port is incorporated and has its principal place of business in Wisconsin, defendant Ameritech is a Delaware corporation with its principal place of business in Illinois, and defendant Car Phones is a Wisconsin corporation with its principal place of business in Wisconsin as well. Tele–Port and Car Phones thus are citizens of the same state, which ordinarily defeats federal court subject matter juris-

1. Plaintiff filed a motion to stay briefing of the motions to dismiss pending resolution of the remand issue. At the time of the motion to stay the only dismissal briefs outstanding were the *defendants'*, and they objected to any stay of briefing. The motions to dismiss and the remand motion involved overlapping issues so I allowed briefing to continue. The motion to stay briefing is now denied as moot. I note, however, that I did not consider any dismissal reply brief when determining the remand issue.

diction. *Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1314–15 (7th Cir.1994) (diversity must be "complete," meaning that no plaintiff may be a citizen of the same state as any defendant).[2]

Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent, however. *Id.* at 1315. If the defendants can show that the joinder of Car Phones was fraudulent, as they alleged in their notice of removal, removal will nevertheless be allowed. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). Joinder is fraudulent when there are false allegations of jurisdictional facts, or more commonly and as is alleged here, when the claim against the nondiverse defendant has no possible chance of success in state court. *Hoosier Energy*, 34 F.3d at 1315.

Even though plaintiff brought the motion to remand, the removing parties bear the burden of proving fraudulent joinder, *see Wilson*, 257 U.S. at 97, 42 S.Ct. 35, and the burden is a heavy one. The removing parties must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the same-state defendant. *Poulos*, 959 F.2d at 73. Further, if there is any doubt as to the right of removal, ambiguities are to be resolved against removal. *Tom's Quality Millwork, Inc. v. Delle Vedove USA, Inc.*, 10 F.Supp.2d 1042, 1044 (E.D.Wis.1998).

When analyzing whether Tele–Port can establish a cause of action against Car Phones I look at the allegations in Tele–Port's complaint. *See Poulos*, 959 F.2d at 74; *Lynch Ford, Inc. v. Ford Motor Co.*,

934 F.Supp. 1005, 1007 (N.D.Ill.1996) (where plaintiff alleged additional facts in support of its theory in motion to remand, "[t]hose factual allegations will be ignored .... [T]he Court's inquiry is limited to the factual assertions of [the] complaint."). Considering additional, subsequent allegations—not included in the complaint—would conflict with the maxim that jurisdiction depends on the situation at the time of removal. *Lynch Ford*, 934 F.Supp. at 1007. Plaintiff submitted two affidavits with its motion for remand setting forth additional facts in support of an allegation—not made in the complaint—of illegal conduct on the part of Ameritech. I will ignore those affidavits and the argument in plaintiff's briefs related thereto.[3]

Tele–Port's sole claim against Car Phones is tortious interference. In evaluating this claim I apply Wisconsin law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (as to substantive law, in a diversity jurisdiction case a federal court must apply the law of the state in which it sits); *Doe v. Roe No. 1*, 52 F.3d 151, 154 (7th Cir.1995) (same). All parties agree that Wisconsin law applies to this particular claim. (*See* Notice of Removal, Ex. C at 2; Pl.'s Br. in Support of Mot. to Remand at 6; Ameritech's Br. in Opp. to Pl.'s Mot. to Remand at 16; Car Phones's Br. in Opp. to Mot. to Remand at 4.)

To plead a claim of tortious interference, Tele–Port had to assert five elements: (1) it had a contract or a prospective contractual relationship with a third party, (2) Car Phones interfered with the relationship, (3) the interference was intentional, (4) a causal connection exists between the interference and the damages,

---

**2.** When diversity of citizenship is the basis for removal, it must exist not only at the time the original action is filed in state court, but also at the time removal is sought. *See Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776–77 (7th Cir.1986); 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3723 (3d ed.1998). Thus, because Tele–Port amended its complaint pri-

or to defendants' removal, Car Phones's citizenship must be considered.

**3.** Because I will not consider this material, defendants' motion to strike these same items based plaintiff's use of hearsay and attorney-client privileged information is denied as moot. The request for sanctions is also denied.

and (5) the defendant was not justified or privileged to interfere. *Duct–O–Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 508 (7th Cir.1994); Wis. JI–Civil 2780 (1996). While the plaintiff must prove elements (1) through (4), the defendant must prove that justification or privilege exists. *Select Creations, Inc. v. Paliafito America, Inc.*, 911 F.Supp. 1130, 1159 (E.D.Wis.1995); Wis JI–Civil 2780 (1996).

It is undisputed that Tele–Port had a contract with a third-party, Ameritech, therefore the first element is present. Tele–Port attached to the Amended Complaint copies of the two contracts it has had with Ameritech. The first contract governs the period from December 1, 1984 through December 31, 1994. The second contract governs the period since January 1, 1995. As the conduct about which plaintiff complains allegedly occurred over several years, both contracts may be involved.

■ Skipping the second element for now, Car Phones attacks the third element. According to Car Phones, the Amended Complaint alleges only that Car Phones had "knowledge of the *form*" of the agreements between Tele–Port and Ameritech, (*see* Am. Compl. ¶ 25 (emphasis added)), not of the actual terms. Therefore, says Car Phones, it could not have intentionally interfered with contracts of which it had no specific knowledge. I am not persuaded, however, that Car Phones had to know the exact wording of the contracts in order to be liable for tortious interference. Knowing the general substance of the Ameritech/Tele–Port deal is enough. As set forth in *Duct–O–Wire*, tortious interference requires only intentional interference with the Tele–Port/Ameritech *relationship*, not specific contractual terms. *See Duct–O–Wire*, 31 F.3d at 508. And as indicated by the Wisconsin form jury instruction on tortious interference: "It is not necessary that defendant had actual knowledge of this specific contract. It is sufficient that defendant had

knowledge of facts which, if followed by inquiry ordinarily made by a reasonable and prudent person, would have led to a disclosure of the contractual relationship...." Wis. JI–Civil 2780 (1996). It follows that if one knows the general form and substance of a contract between two other parties, one has constructive knowledge of enough of its terms such that one should not interfere.

■ Car Phones also contends that because the Amended Complaint does not assert Car Phones knew how much Tele–Port may have received from Ameritech as market development fund payments, it cannot support any inference of intentional interference. The Amended Complaint, however, does assert that Car Phones intentionally induced Ameritech to pay Car Phones "disproportional and unequal" market development fund payments in breach of Ameritech's agreements with Tele–Port. This is notice pleading,[4] and I find that element three is alleged sufficiently.

Defendants' next argument appears, on its face, to be much better. They attack element two, actual interference, arguing that plaintiff's breach of contract claim has no possible chance of success and, *a fortiori*, there can be no tortious interference claim based upon conduct that causes no breach. The breach of contract claim does appear weak, as no provision in either contract attached to the complaint appears to address, let alone prohibit, any type of subsidy payments for market development. Defendants' argument, however, is not as strong as it first appears. It relies on the following premise, as stated by Ameritech: "Without a breach there is no tortious interference with an existing contractual relationship." (Ameritech's Br. in Opp. to Pl.'s Mot. to Remand at 16.) Unfortunately for defendants, though, the case cited for this pivotal proposition, *Sampson Invs.*

---

4. "[U]nder Wisconsin's liberal 'notice pleading' rules, all that is required of a complaint is that it give 'fair notice' of the claim being

advanced." *Magnum Radio, Inc. v. Brieske*, 217 Wis.2d 130, 136, 577 N.W.2d 377 (Ct. App.1998).

*v. Jondex Corp.*, 176 Wis.2d 55, 73, 499 N.W.2d 177 (1993), does *not* so hold.

■ *Sampson* and other Wisconsin cases indicate, in fact, that in many circumstances a cause of action for tortious interference with contract indeed can be maintained even though there is no actual breach of contract. In *Wisconsin Power & Light Co. v. Gerke*, 20 Wis.2d 181, 121 N.W.2d 912 (1963), rather than contending that a breach of contract was the basis for a tortious interference claim, the plaintiff sought "redress because the performance of his contract was made less profitable." *Id.* at 187, 121 N.W.2d 912. The Supreme Court of Wisconsin stated it had "no difficulty with the concept of the cause of action Mr. Gerke asserts." *Id.* at 187, 121 N.W.2d 912. In *Sampson* the supreme court acknowledged that its *Gerke* decision clearly

> recognized a cause of action for tortious interference with contract even though there was no breach of the contract. In *Gerke*, this court, quoting 1 Harper & James, *Law of Torts*, § 6.9, at 499 with approval, stated that "the value of a bargain may be impaired although there is no failure of performance."

*Sampson*, 176 Wis.2d at 72, 499 N.W.2d 177 (quoting *Gerke*, 20 Wis.2d at 187, 121 N.W.2d 912). The *Sampson* court further noted that

> *Prosser & Keeton On the Law of Torts* explains that "tort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under contract with another person if the interference causes the plaintiff to lose a right under the contract or makes the contract rights more costly or less valuable."

*Sampson*, 176 Wis.2d at 72–73, 499 N.W.2d 177 (alteration in original) (quoting W. Page Keeton, et al., *Prosser and Keeton On the Law of Torts* § 129 (5th ed.1984)).

While the *Sampson* court did not state that a tortious interference claim is always available in the absence of an actual breach of an agreement, *see Sampson*, 176 Wis.2d at 71, 499 N.W.2d 177, it nevertheless recognized *some* availability of the tort when a breach does not occur: "where there has been no breach of a contract, a plaintiff seeking to maintain a claim for tortious interference with contract must show some specific right which has been interfered with." *Id.* at 73, 499 N.W.2d 177. That is a far cry from defendants' proffered interpretation that as a matter of law *no* tortious interference claim can survive without an underlying breach of contract—a reading directly contrary to *Gerke*, a case that the Supreme Court of Wisconsin did not overrule. *See Magnum Radio, Inc. v. Brieske*, 217 Wis.2d 130, 577 N.W.2d 377 (Ct.App.1998) (relying on *Gerke*'s holding).

The Wisconsin Court of Appeals recently confirmed that a breach of an underlying contract is *not* a prerequisite for finding tortious interference. In *Magnum*, the plaintiff claimed injury resulting from actions by the defendant that allegedly slowed performance of plaintiff's contract to purchase radio stations, which, as in *Gerke*, ultimately reduced the benefit of the plaintiff's bargain. *Magnum*, 217 Wis.2d at 138–39, 577 N.W.2d 377. The question in *Magnum*, as framed by the court of appeals, was "whether a person whose alleged interference with a contractual relationship results not in abandonment or nonperformance of the contract but only in making the plaintiff's performance of the contract more expensive or onerous may also be held liable for his or her actions." *Id.* at 136–37, 577 N.W.2d 377. The court expressly confirmed adoption of the position of the Restatement (Second) of Torts § 766A (1979), which answers the question in the affirmative. *Id.* at 137, 139–40, 577 N.W.2d 377. According to the comment to that Restatement section, it is "sufficient that the performance of the contract to which the plaintiff is obligated is made more expensive to him, so that he loses all or part of the profits that he would otherwise have obtained." Restatement (Second) of Torts § 766A cmt. g (1979).

Judge Myron L. Gordon of this district also has concluded that "Wisconsin law ... does not require that a defendant in a tortious interference case actually have caused a breach of the contract, but only that the defendant interfered with the relationship," pointing to *Magnum* and *Duct–O–Wire* for support. *Shank v. William R. Hague, Inc.*, 16 F.Supp.2d 1038, 1046 (E.D.Wis.1998). General authorities indicate the same. *See* 45 Am.Jur.2d *Interference* § 41 (1969 & Supp.1998) ("A party to a contract has a right of action against persons who, by conduct short of actually inducing the other party to breach the contract, substantially interfere with the performance of the contract.... [A party] may recover for any act which retards, makes more difficult, or prevents performance or makes performance of a contract of less value to him." (citing *Gerke* for support)).

■ Both contracts attached to the Amended Complaint indicate that Tele–Port earns contractual payments from Ameritech through commissions based on the number of subscribers Tele–Port signs up for Ameritech's cellular phone service. According to Tele–Port, as a result of Car Phones's interference Tele–Port has not been able to garner as many customers for Ameritech as it would have if competitor Car Phones had not received disproportionate market development funds, allowing Car Phones to expand its business more than Tele–Port could: "Tele–Port has been damaged by the unfair competitive advantage that Car Phones Plus enjoyed ... [which] has caused the plaintiff to suffer lost sales and lost profits and also greatly diminished the value of plaintiff's business through the loss of residuals and future lost sales and profits." (Am. Compl. ¶ 27; *see also* Am. Compl. ¶ 6 (payments subsidized Car Phones's business and put Tele–Port at a competitive disadvantage); Am. Compl. Ex. A § 7 (commissions based on enrollees); Am. Compl. Ex. B at § 3 & Ex. B (same).) Thus Tele–Port, similar to the plaintiffs in *Magnum* and *Gerke*, asserts that Car Phones impeded performance of the contracts, ultimately

reducing the value and benefit of Tele–Port's bargain.

Even if no provision of the Tele–Port/Ameritech contracts expressly prohibits Ameritech from making market development fund payments to Car Phones in amounts greater than any such payments made to Tele–Port, Tele–Port's right to obtain fees and commissions based on its attracting additional customers might be a "specific right which has been interfered with" by Car Phones within the meaning of *Sampson*. Under the facts of the *Sampson* case, where a lease agreement did not require the lessee to continuously operate a warehouse-type supermarket the court found no possible right of the lessor's that had been infringed by the defendant's inducements to the lessee to move its supermarket down the road. *See Sampson*, 176 Wis.2d at 73, 499 N.W.2d 177. The *Sampson* plaintiff, who the supreme court said had no viable tortious interference claim, was receiving bargained-for rent payments regardless of whether the lessee stayed or vacated the premises. Here, Tele–Port's compensation is tied directly to the number of customers it can sign up for Ameritech cellular phone service. Car Phones's alleged improper interference with obtaining those customers thus arguably provides the claim of interference with a "specific right" that was missing in *Sampson*.

Again, all that is necessary at this point is the possibility that a state court would find that Tele–Port has a cause of action, and all matters of law must be resolved in Tele–Port's favor. I believe that under Wisconsin law as set forth in *Sampson*, *Gerke*, and *Magnum* the possibility of tortious interference by Car Phones exists, even in the absence of an actual breach of contract by Ameritech. Thus, the complaint adequately alleges item two of the *Duct–O–Wire* elements for tortious interference claims.

Element four, the causal connection between the alleged interference and asserted damages, is not disputed by the defen-

dants. And element five, which may not even need to be pled by plaintiff because defendant bears the burden on that matter, is nevertheless sufficiently stated as well, as the Amended Complaint asserts that Car Phones "without privilege" induced Ameritech to make the market development fund payments. As a result, for purposes of the remand motion, Tele–Port has adequately set forth a tortious interference claim and joinder has not been fraudulent.

 Plaintiff focused on trying to support its breach of contract claim rather than attacking defendants' premise that the breach of contract and tortious interference claims must stand or fall together. Nevertheless, when it comes to removal and fraudulent joinder, the burden is on *defendants* to show that removal is proper, and this court on its own must scrutinize all issues of subject matter jurisdiction. Under state tortious interference law and federal removal law remand of this case is required. Tele–Port's nonfraudulent presence in this case destroys complete diversity.

Because I have no subject matter jurisdiction I have no power to address the motions to dismiss. Those issues are left for the state court to address.[5]

As a result,

**IT IS ORDERED** that plaintiff's motion to stay briefing of the motion to dismiss is **DENIED** as moot.

**IT IS ORDERED** that Ameritech's motion to strike and for sanctions is **DENIED**.

**AND IT IS ORDERED** that plaintiff's motion to remand is **GRANTED**.

---

5.  The state court, of course, is not bound by my comments regarding the strength of the breach of contract claim. My decision on the remand issue is based on my belief that re-
gardless of whether the breach of contract claim can survive a motion to dismiss there is a possibility that the tortious interference claim could succeed.