WANGARD PARTNERS, INC., Plaintiff-Appellant,

The BOERKE COMPANY, INC., Plaintiff,

v.

Gerald GRAF, Shirley Graf, Steinhafels, Inc.
and Pewaukee Development, LLC,
Defendants-Respondents.

Court of Appeals

*No. 2005AP1420. Oral argument April 4, 2006.
—Decided May 24, 2006.*

2006 WI App 115

(Also reported in 719 N.W.2d 523.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Paul R. Erickson* and *Mark J. Andres* of *Gutglass, Erickson, Bonville, Seibel & Falkner, S.C.*, of Milwaukee. There was oral argument by *Paul R. Erickson*.

On behalf of the defendants-respondents Gerald and Shirley Graf, the cause was submitted on the brief of *Lori J. Fabian* and *Charles M. Davies* of *Hippenmeyer, Reilly, Moodie & Blum, S.C.* of Waukesha. There was oral argument by *Lori J. Fabian*.

On behalf of defendants-respondents Steinhafels, Inc. and Pewaukee Development, LLC, the cause was submitted on the brief of *Paul E. Benson* and *Ian A.J. Pitz* of *Michael Best & Friedrich LLP*. There was oral argument by *Paul E. Benson*.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. BROWN, J.   A commercial real estate broker commenced an action against the buyer and the seller of certain real property, alleging that the parties had conspired to negotiate secretly and to delay the consummation of the agreement they reached in order to avoid paying the broker its commission. The trial court dismissed the complaint on two grounds. First, it understood the law to require that the listing contract contain certain statutory disclosures and concluded that their absence from this listing contract rendered the contract void. Alternatively, it held that the allegations in the complaint "sounded in fraud" and therefore had to be pled with particularity. We disagree. The statute requires only that a broker make the disclosures before providing brokerage services; it imposes no requirement that the disclosures be included within the four corners of the listing contract. Further, the com-

511

plaint does not plead fraud. The causes of action asserted therein are premised not on fraud but rather on a breach of contract.

¶ 2.  On October 29, 2004, Wangard Partners, Inc. filed a complaint against Steinhafels, Inc. and Pewaukee Development, LLC (collectively Steinhafels) and against Gerald and Shirley Graf.[1] Because we are reviewing a decision based on a motion to dismiss, our recitation of the facts incorporates factual allegations in the complaint. *See Lane v. Sharp Packaging Sys., Inc.*, 2001 WI App 250, ¶ 15, 248 Wis. 2d 380, 635 N.W.2d 896 (motion to dismiss tests sufficiency of the complaint, and we take all allegations therein as true).[2]

¶ 3.  The Grafs owned approximately sixty acres of vacant land in Pewaukee, Wisconsin, that they wished to sell. On June 8, 1996, they entered into an exclusive listing contract with Wangard, a broker. Shirley Graf

---

[1] This complaint was actually an amended pleading, but for ease of reference we refer to it simply as "the complaint." Initially, the complaint also named The Boerke Company, Inc. as a plaintiff, but Boerke is not a party to this appeal.

[2] It is true that Wangard submitted certain materials outside of the pleadings in response to the defendants' motions to dismiss, but we do not accept the defendants' conclusion that the motion was thereby converted to a summary judgment motion. Although these materials, namely, an affidavit, revealed that the parties disputed certain issues of fact, nothing in the record indicates that the trial court resolved those issues in any party's favor or that it considered these outside materials. Further, the court never apprised the parties of an intention to treat the motion as one for summary judgment. *See CTI of Ne. Wis., LLC v. Herrell*, 2003 WI App 19, ¶¶ 6, 8, 259 Wis. 2d 756, 656 N.W.2d 794 (Ct. App. 2002) (court must notify parties of intent to convert motion to dismiss into summary judgment motion; such conversion not necessary where court does not rely upon outside materials).

had drafted the document after she had rejected the form WB-5 Commercial Listing Contract that Wangard had prepared. Originally, the agreement was to last until December 30, 1996, but the parties extended it by amendments for another two years. In addition, the contract provided that if, prior to the expiration of the agreement, Wangard procured an offer to purchase, or if the Grafs entered into an agreement or granted an option, the contract term would automatically extend up to the date of closing with respect to such offer, agreement, or option.

¶ 4. The listing contract specified several circumstances in which Wangard would be entitled to a seven percent brokerage commission: First, it could earn a commission if it procured a buyer at the listed price and consistent with the other terms of the contract, or if the property was sold pursuant to such terms, or if an exchange occurred. Second, it could earn a commission if the property or any part of it was sold, optioned (and such option was later exercised), exchanged, or otherwise disposed of under terms the Grafs considered acceptable. The final way Wangard could earn a commission was if, during a six-month grace period after the scheduled expiration of the contract, the property was sold, exchanged, or otherwise disposed of to any prospect, or if an option was granted to a prospect during that time which the prospect later exercised. A "prospect" included anyone with whom Wangard or its agents negotiated.

¶ 5. The listing contract required the Grafs to refer anyone making inquiries about the property to Wangard. It further obligated them to notify Wangard of the names of these inquirers. In addition, the contract specified that the Grafs were to cooperate with Wangard throughout the term of the contract.

513

¶ 6. The listing contract did not contain certain disclosures enumerated in WIS. STAT. § 452.135(2) (2003–04).[3] Wangard provided the Grafs with the required information in a separate document at a later date.

¶ 7. At some point after the Grafs had entered into their listing contract with Wangard, two real estate brokers from The Boerke Company contacted Wangard on behalf of Steinhafels furniture stores, who wanted to purchase some vacant land suitable for building a warehouse. After the brokers investigated the property, Boerke and Wangard introduced Steinhafels to the Grafs. Throughout 1997 and 1998, Wangard worked diligently to assist both defendants in negotiating a contract for the Graf's property.

¶ 8. During this time, Steinhafels made two offers for the property, one on April 18, 1997, and another on August 26, 1998. The Grafs rejected both and informed Wangard that the terms were unacceptable to them. The Grafs also told Wangard that they would not authorize any counteroffer to the second proposal. Throughout the end of 1998, when the listing contract was set to expire, the Grafs represented to Wangard that Steinhafels' proposals were unacceptable and that no contract would be agreed upon.

¶ 9. Despite this representation and unbeknownst to Wangard, the Grafs continued to meet directly with Steinhafels and reached a secret agreement as to the material terms of a sale at some point during the term of the listing contract or during the six-month grace period applicable to certain agreements with "prospects." This agreement is apparent

---

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

from representations that Steinhafels made to a planning company and city officials at various meetings—which took place during the spring and summer of 1999—concerning development plans for the Graf property.

¶ 10. Despite the fact that the defendants had reached an agreement, they delayed consummating the transaction until long after the listing contract had expired so that the Grafs could avoid paying Wangard its commission. Steinhafels submitted its written offer to purchase on March 13, 2001, and the actual sale did not occur until February 28, 2002. This conduct contravened the Grafs' contractual obligations to cooperate with Wangard, to notify Wangard of anyone making inquiries about the property, and to pay Wangard a commission.

¶ 11. The Grafs engaged in this misconduct at the urging of Steinhafels and based on certain representations it made to them. Steinhafels had falsely represented to the Grafs that Wangard was engaging in conduct adverse to their interests. Specifically, it told them that Wangard insisted that Steinhafels include certain terms in its offers that it knew the Grafs would find objectionable. Among these provisions were contingencies requiring the Grafs to partially finance the purchase, requiring hotel developments, and regarding third-party purchasers. Steinhafels also enticed the Grafs with a $294,000 commission it would otherwise have owed Wangard. Steinhafels improperly profited from this diversion of Wangard's commission by using it as consideration for an option to purchase.

¶ 12. Based on the above allegations, the complaint alleged three causes of action against each defendant. It asserted claims for equitable relief and conspiracy to injure against both Steinhafels and the Grafs.

Additionally, it claimed breach of contract against the Grafs and intentional interference with contract against Steinhafels.

¶ 13. Both the Grafs and Steinhafels moved to dismiss the complaint. Specifically, they claimed that the listing contract was invalid because it did not include any of the statutory disclosures required by Wis. STAT. § 452.135(2). According to the defendants, the lack of a valid contract precluded Wangard's claims for breach of contract, intentional interference with contract, and conspiracy to injure. They further averred that even if the listing contract was valid, the complaint failed to meet the proper pleading requirements. The defendants maintained that Wangard's allegations "sound in fraud" and therefore must be pled with particularity. In addition, they claimed that Wangard had no cause of action for equitable relief because the law "preclude[s] brokers from obtaining recovery based upon quantum meruit and other quasi-contractual theories." Allowing such relief would contradict the legislature's intent that no broker recover a commission on real estate unless it earns the commission pursuant to the terms of a written agreement. Finally, the Grafs contended that their conduct did not violate the terms of the listing contract even assuming the contract's validity.

¶ 14. The circuit court held a motion hearing and ultimately dismissed the complaint. It adopted the defendants' positions with respect to all arguments. Wangard appeals.

¶ 15. We first address the defendants' contention that Wangard's claims for breach of contract, intentional interference with contract, and conspiracy to injure are doomed by the failure to include statutory disclosures in the listing agreement. The Grafs and

Steinhafels assert that WIS. STAT. § 452.135 requires such disclosures and that their absence from the listing contract renders it void.

¶ 16.   Our resolution of this issue requires us to interpret WIS. STAT. § 452.135. This exercise presents a question of law for our independent review. *See State v. Moran*, 2005 WI 115, ¶ 26, 284 Wis. 2d 24, 700 N.W.2d 884 (statutory interpretation and application to a set of facts present questions of law for de novo review). When we interpret a statute, we look first at the language of the statute, and where the statutory meaning is plain and unambiguous, we stop the inquiry and apply the language as written. *Id.* Intrinsic sources of meaning such as context and structure inform our understanding of the statutory language. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.* Our construction of a statute also seeks to give effect to every part of the statute and avoid surplusage. *Id.* Only if the statute is ambiguous do we turn to extrinsic sources such as legislative history. *Id.*, ¶ 51.

¶ 17.   Accordingly, we begin with the language of WIS. STAT. § 452.135. The statute reads in relevant part:

**452.135 Confirmation and disclosure of relationship. (1)** No broker may provide brokerage services without an agency agreement that authorizes the broker to provide those brokerage services. The agency

> agreement shall contain a statement of the terms and conditions of the brokerage services that the broker will provide, including a statement required under s. 452.138, if applicable.

> **(2)** No broker may provide brokerage services to a party to a transaction unless the broker has provided to the party a written agency disclosure form containing all of the following . . . . [statute goes on to enumerate confidentiality obligations and statements regarding broker's duties to its client and other parties].

We reject the defendants' suggestion that the "terms and conditions of the brokerage services" referenced in § 452.135(1) encompasses the disclosure requirements enumerated in § 452.135(2). The reference in § 452.135(2) to a "disclosure form" would have been superfluous had the legislature intended the disclosures to be included within the four corners of the agency agreement (i.e., the listing contract), and it defies common sense to assume that the drafters used two different terms—"agency agreement" and "disclosure form"—to refer to the same document. Moreover, nothing else in the statute indicates that § 452.135(2) is merely an elaboration on the requirements in § 452.135(1). In our view, "terms and conditions of the brokerage services" refers merely to the terms and conditions to which the parties to the listing contract have agreed. *See* § 452.135(1).

¶ 18. This conclusion becomes apparent when one views Wis. Stat. § 452.135(1) in conjunction with Wis. Stat. § 452.138. Section 452.135 requires the broker to include "a statement required under s. 452.138, if applicable." Section 452.138 provides that unless the parties agree otherwise, a broker may simultaneously provide brokerage services to multiple clients. It states that "[i]f the broker and a client *agree* that the broker is

to provide brokerage services only to that client, the agency agreement under s. 452.135(1) shall contain a statement of that *agreement.*" Sec. 452.138 (emphases added). In other words, § 452.138 sets forth certain statutory default rules, but the parties to a listing contract may contract out of them by agreement. Sections 452.135(1) and 452.138 do not require the listing contract to contain the default rules, only agreements contracting out of those default rules. Thus, § 452.135(1) requires only terms of *agreement* to be included in the listing contract. Disclosure duties are not terms of agreement.

¶ 19.   Not only does the absence of disclosures from the listing contract not offend the express provisions of WIS. STAT. § 452.135(1), it also does not contravene the mandates of § 452.135(2). Because § 452.135(1) prohibits a broker from rendering brokerage services prior to the agency agreement, the listing contract cannot possibly be a brokerage service. Thus, the mere fact that a broker omitted the disclosures from an agency agreement would not establish that the broker unlawfully provided brokerage services before supplying the disclosure form.

¶ 20.   Surrounding provisions also shed light on what the legislature meant by its requirement that a broker provide the disclosure form to "a party to a transaction" before rendering "brokerage services." *See* WIS. STAT. § 452.135. WISCONSIN STAT. § 452.01 defines all of these terms. A "party" includes any person "seeking to sell, exchange, buy or rent an interest in real estate . . . [and] includes a person who seeks to grant or accept an option to buy, sell or rent an interest in real estate . . . ." *See* § 452.01(5r). " 'Transaction' means the sale, exchange, purchase or rental of, or the granting or

519

acceptance of an option to sell, exchange, purchase or rent, an interest in real estate . . . ." Sec. 452.01(10). These definitions alone establish that both the buyer and the seller in a real estate deal are "parties to the transaction." Because § 452.135(1) prohibits a broker from rendering brokerage services prior to the agency agreement, one "party" will obviously not have entered the picture at the time of the listing contract. "Transactions," by their very nature, require multiple parties. Thus, a client is not yet a party "to a transaction" at the time he or she enters an agency agreement with a broker.

¶ 21. WISCONSIN STAT. § 452.01 also defines "brokerage service" as any service described under § 452.01(2)(a)-(h), which supplies a definition of "broker." *See* § 452.01(3e). The paragraphs relevant to this appeal are § 452.01(2)(a) and (h). They indicate that a broker engages in brokerage services when he or she "[f]or another, and for commission, money or other thing of value, negotiates or offers or attempts to negotiate a sale, exchange, purchase or rental of an interest or estate in real estate, *see* § 452.01(2)(a), or "[f]or another, and for a commission, money or other thing of value, promotes the sale, exchange, purchase, option, rental or leasing of real estate," *see* § 452.01(2)(h). Assuming the broker has obeyed WIS. STAT. § 452.135(1), he or she will not have begun providing any of these services at the time the parties enter into the listing contract. Rather, these services will commence at some point thereafter. A broker will be in compliance with § 452.135(2) so long as he or she provides the disclosure form prior to that time.

¶ 22. Although the foregoing suffices to support our holding, we deem it worthwhile to note that com-

mentators appear to have reached a similar conclusion. Wrede H. Smith Jr. & Richard J. Staff, *The New Real Estate Agency Law: Redefining the Role of Real Estate Brokers,* WISCONSIN LAWYER, Oct. 1994, at 9, 58–59 & n.24, notes that WIS. STAT. § 452.135(2) contains a disclosure requirement that requires brokers to communicate to all parties what duties they owe to both client and nonclient parties.[4] According to this source, "The new mandatory agency disclosure form generally will be given to clients when the agency agreement is executed, and to customers when the customer's specific needs begin to be identified and brokerage services start to be rendered." Smith & Staff, *supra,* at 59. "Generally," of course, suggests that including disclosures in the listing contract is not a requirement but rather a convenient way of meeting the statutory disclosure requirement.

¶ 23.    This interpretation, moreover, is consonant with what, according to Smith and Staff, is the purpose of the disclosure requirement, namely, to ensure that all parties to a real estate transaction receive a meaningful explanation of the broker's duties to each party. *See id.* at 58–59. They observe that in the years preceding the change, considerable confusion existed with respect to the proper role of a real estate agent and what duties the agent owed to buyers and sellers. *Id.* at 9. Buyers in particular, they noted, often do not understand that the selling agents who help them look for properties actually represent the property owners. *Id.* at 10. We do not see how omitting the disclosures from a listing contract frustrates the statutory purpose so long as each party receives the proper disclosures before the broker begins

---

[4] Both authors played a role in passing the current version of WIS. STAT. § 452.135. *See* Wrede H. Smith Jr. & Richard J. Staff, *The New Real Estate Agency Law: Redefining the Role of Real Estate Brokers*, WISCONSIN LAWYER, Oct. 1994, at 9, 59.

engaging in negotiation and other broker services described above; yet, the rigid construction advanced by Steinhafels and the Grafs would invalidate a listing contract even if the broker *simultaneously* provided the disclosures in a separate document.

¶ 24.  We find further support for our holding in the content of the state-approved commercial listing contract form in use at the time Wangard entered into its agency agreement with the Grafs. The parties do not dispute that when Wangard prepared the initial draft of an agreement, it used the state-approved form then in use for commercial listings, which did not include disclosures on it. Steinhafels is quick to point out that the form was changed in 2000 and that the current version of the form does contain the disclosures on it. It asks, rhetorically, "If the disclosures did not have to be in the same document, what was the impetus for the . . . change?" We acknowledge the defendants' assertion that administrative forms may not always comply with statutory requirements; in light of the text and purpose of the statute, we deem the absence of the disclosures in the state-approved form to be indicative of the fact that the statute did not require the disclosures to be part of the listing contract.

¶ 25.  Moreover, although it is entirely possible that the agency believed such a change was necessary to effectuate the legislative intent, it is also possible that the agency had other reasons for changing the form. The parties appear to agree that at the time Wangard and the Grafs contracted for brokerage services, a separate listing contract form existed which did contain certain disclosures. These contracts were used in the context of agency agreements for the sale of *residential* property. It is entirely possible that the desire for greater uniformity between residential and commercial

listing contracts drove the change. It also may have done so as a convenience, so that the broker would not have to draft a separate disclosure form. In any event, we will not speculate about the reason why the administrative agency that promulgated the forms made the change.

¶ 26. We note that Steinhafels appears to make similar arguments regarding more recent legislative amendments that require the listing contract to contain the disclosures. It opines that the legislature must have intended to clarify the current version of the statutes. Again, however, the legislature could have had any number of reasons for an amendment. It could just as easily have intended to *change* the law to track current practice. Moreover, we must read WIS. STAT. § 452.135 as written, not based on subsequent developments in the law. Based on the foregoing, we reverse the circuit court's ruling that the absence of disclosures in the listing contract rendered it invalid and unenforceable.

¶ 27. We now turn to several alternative arguments that the defendants raise. First, in their "statement of the case," the Grafs dispute Wangard's interpretation of the listing contract. We understand them to contend that even if the listing contract was valid, the allegations in the complaint do not establish that they have done anything to breach its terms. The Grafs did not, however, incorporate this issue in their argument section. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (inadequately briefed issues need not be reviewed). Moreover, the circuit court never considered this issue. Accordingly, we leave it for the court to address on remand.

¶ 28. We also do not discuss the defendants' contention that Wangard's fourth cause of action fails on

the basis that brokers seeking to recover commissions may not invoke equitable relief. It appears that Wangard brought its equity claim as an alternative claim in the event that the circuit court rejected its other claims. Because the listing contract was valid, however, these other claims are still live. Again, the circuit court may address this issue on remand if it so chooses.

¶ 29.   In addition to the claim that equitable relief is unavailable to Wangard, Steinhafels raises two further arguments. First, it contends that any judgment in favor of Wangard would contravene WIS. STAT. § 452.133(3), which prohibits the broker from receiving compensation from anyone other than the client, unless all parties consent. Our review of the record reveals that Steinhafels never raised this issue in the circuit court. We deem it waived. *See Greene v. Hahn*, 2004 WI App 214, ¶ 21, 277 Wis. 2d 473, 689 N.W.2d 657 (issues first raised on appeal are ordinarily waived). Again, the circuit court may pass on this issue on remand.

¶ 30.   We will, however, entertain Steinhafels' second contention. We understand Steinhafels to argue that even if disclosures need not ordinarily appear within the four corners of a listing contract, it was important for Wangard's listing contract to contain such disclosures "because that document contained an integration clause that indicated it was 'the complete agreement of the parties.' " Steinhafels cites to *Kramer v. Alpine Valley Resort, Inc.*, 108 Wis. 2d 417, 426, 321 N.W.2d 293 (1982), for the proposition that when parties to a contract intend a writing to be the final expression of their agreement, the terms of the writing cannot be varied by evidence of another written or oral agreement in the absence of fraud.

¶ 31. *Kramer* does not control here. The statutorily required disclosure form does not contain any terms of agreement. The duties it enumerates arise as a matter of law. The parties to a listing contract do not have the freedom to "accept" or "reject" them as part of their "agreement." Thus, Wangard did not need to include these duties within the four corners of the listing contract.

¶ 32. Next, although the defendants do not develop the issue, they appear to dispute whether Wangard provided the statutory disclosures prior to rendering brokerage services. This court will not resolve that factual question. The circuit court, once again, may visit that issue during remand.

¶ 33. Finally, we address whether Wangard met the proper pleading requirements. Wisconsin Stat. § 802.03(2) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." This statute provides an exception to Wisconsin's general "notice pleading" rules, which merely require that the complaint give "fair notice" of the claim being advanced. *Cf. Magnum Radio, Inc. v. Brieske*, 217 Wis. 2d 130, 136, 577 N.W.2d 377 (Ct. App. 1998) (stating Wisconsin's liberal "notice pleading" rule).

¶ 34. Steinhafels and the Grafs point us to federal case law interpreting Fed. R. Civ. P. 9(b), the federal counterpart to Wis. Stat. § 802.03(2). *See Rendler v. Markos*, 154 Wis. 2d 420, 428–29, 453 N.W.2d 202 (Ct. App. 1990) (recognizing both provisions are identical and should not be interpreted differently). These precedents apply the heightened pleading requirements in 9(b) not only to fraud claims but also to claims that "sound in fraud." *See e.g., Hayduk v. Lanna*, 775 F.2d 441, 443 (1st

Cir. 1985) (particularity required when "fraud lies at the core of the action" (citation omitted)). The defendants maintain that:

> The particularity requirements of Rule 9(b) must therefore be met in actions alleging fraud claims titled as such *and* claims of conspiracy to defraud or conceal. *See Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966); *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972); *Klein v. Council of Chemical Assoc.*, 587 F. Supp. 213, 227 (E.D. Pa. 1984); *Greater Valley Terminal Corp. v. Peltz St. Terminals*, 21 F.R.D. 167, 168 n.2 (E.D. Pa. 1957).

According to the defendants, Wangard's complaint, like the complaints in *Robison, Segal,* and *Klein*, suggests only a single claim:   "conspiracy to defraud."

¶ 35.   We do not understand the defendants to argue that all claims for intentional interference with contract or conspiracy to injure plaintiffs via such interference must meet heightened pleading requirements. Rather, they appear to suggest that where, as here, the plaintiff alleges that the defendants engaged in fraudulent behavior, such accusations must be pled with particularity. We are unpersuaded.

¶ 36.   We agree with Wangard that these cases are simply not on point. The complaints in those cases alleged only "conspiracy to defraud." Even if a finding of fraud is essential to a cause of action for "conspiracy to defraud,"[5] such a finding is not essential to the claims asserted here. The complaint alleges that the listing contract expressly required the Grafs to keep Wangard apprised of any inquiries concerning the property, to

---

[5] *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966), did involve a claim for breach of fiduciary duty, but the plaintiff admitted that this breach was predicated on a "scheme to defraud."

cooperate with Wangard during the term of the listing contract, and to pay a brokerage commission. It also alleges that the Grafs did not communicate Steinhafels' continuing interest, cooperate with Wangard to reach a deal, or pay a commission. These allegations alone establish a breach of contract on the Grafs' part.

¶ 37. Moreover, the complaint establishes that Steinhafels encouraged this breach by (1) persuading the Grafs not to pay Wangard its commission (in violation of the duty to pay a commission) and (2) by influencing them to deal with Steinhafels directly instead of through Wangard (in violation of the duties to communicate and cooperate with Wangard). These allegations sufficiently establish first, that Steinhafels knew of the contractual relationship and knowingly interfered with it and second, that Wangard was damaged by not receiving the commission it earned.[6] Whether Steinhafels concealed this misconduct or shamelessly flaunted it is really beside the point. Wangard's inclusion of fraud allegations in its complaint does not nullify the sufficiency of its other allegations in stating a claim for intentional interference. Because Wangard's intentional interference claim can stand on its own with or without the fraud allega-

---

[6] These allegations establish a cause of action for intentional interference with contract. The elements of that tort, set forth in *Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶ 18 n.8, 274 Wis. 2d 719, 685 N.W.2d 154, are as follows: "(1) the plaintiff must have had a contract or prospective contractual relationship with a third party; (2) the defendant must have interfered with that relationship; (3) the interference by the defendant must have been intentional; (4) there must be a causal connection between the interference and damages; and (5) the defendant must not have been justified or privileged to interfere." (Citation omitted.)

tions, the conspiracy claim—which is predicated on the intentional interference claim—also must only satisfy general notice pleading rules.[7]

¶ 38. We find support for our holding in *Purtell v. Tehan*, 29 Wis. 2d 631, 139 N.W.2d 655 (1966). *Purtell*, in fact, bears some striking similarity to this action. In that case, Purtell was a real estate broker for the Tehans. *Id.* at 633. Pursuant to the listing contract, the Tehans would have owed Purtell a $15,000 commission upon the sale of the property. *See id.* at 634. In order to avoid that commission, they reached an agreement with the prospective buyers wherein the latter would insert objectionable terms into their proposals so as to give the Tehans an excuse to reject them. *See id.* at 634, 638. After the listing contract expired, these bogus terms were deleted, and the parties entered an agreement identical to those originally arranged by Purtell. *Id.* at 634.

¶ 39. Interestingly, the relevant paragraph of Purtell's complaint read as follows and used the same "conspiracy to defraud" language as the federal cases that the defendants cite:

> That the Defendants *conspired to defraud* the Plaintiffs of their just commission due pursuant to said

[7] The defendants do not dispute Wangard's assertion that a civil conspiracy claim involves only two elements, namely, (1) an agreement between the alleged conspirator and the alleged wrongdoer and (2) a wrongful act committed in furtherance of the conspiracy. The "wrongful act" here would be intentional interference with contract (with respect to Steinhafels) or breach of contract (with respect to the Grafs). Our discussion above explains how Wangard has sufficiently alleged that second element even without the fraud accusations. As to the first element, agreement among the defendants, Wangard is not a relevant party, so fraud is not an issue.

contracts and other writing and memorandums and oral agreements between the brokers and the parties, on information and belief, said conspiracy and fraud being committed as follows: ... [sets forth allegations of agreeing to insert objectionable terms until the listing contract expired] . . . thereby *defrauding* and attempting to deprive the Plaintiff brokers of their just commissions.

*Id.* (emphases added). The court considered whether this paragraph spelled out a cause of action against the defendants. *Id.* at 635, 637–38. It held, "The alleged facts, if true, clearly establish a cause of action . . . for inducing a breach of contract."[8] *Id.* at 638. Significantly, the court further determined that it was therefore "not necessary to consider whether the allegations of the complaint are also sufficient to allege a conspiracy to defraud." *Id.* In other words, *regardless* of whether the complaint inadequately stated a claim for conspiracy to defraud, the allegations therein were sufficient to establish an intentional interference claim.

¶ 40. It is obvious to us that *Purtell* did not apply heightened pleading requirements to Purtell's complaint. It omitted to do so, even where the complaint clearly alleged conspiracy to *defraud.* If the court there did not dismiss the complaint based on allegations "sounding in fraud," we certainly do not see why we should do so where the causes of action alleged are merely interference with contract and conspiracy to so interfere.

---

[8] Although stated differently from the formulation set forth in *Finch*, the elements of "inducing a breach of contract" appear to be substantively the same as those for "intentional interference with contract." *Compare Finch*, 274 Wis. 2d 719, ¶ 18 n.8, *with Purtell v. Tehan*, 29 Wis. 2d 631, 638, 139 N.W.2d 655 (1966).

¶ 41. In sum, Wangard's pleading is not deficient for want of specificity. Even if we ignore the references to fraud or misrepresentation, the complaint states claims for both intentional interference with contract and conspiracy to interfere. Moreover, the listing contract is not void for its omission of statutory disclosures within its four corners. WISCONSIN STAT. § 452.135(2) requires only that a broker make these disclosures prior to providing brokerage services to a party to a transaction. We remand to the circuit court with directions to reinstate the complaint. At that time, it may also address any of the defendants' alternative arguments that we have not reached.

*By the Court.*—Judgment and order reversed and cause remanded with directions.